B. K. ELLIOTT COMPANY *v.* UNITED STATES (No. 4902)[1]

---
[1] C. A. D. 659.

United States Court of Customs and Patent Appeals, June 10, 1957

*Jerome G. Clifford* (*George W. Israel* of counsel) for appellant.

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Daniel I. Auster*, trial attorney, of counsel), for the United States.

[Oral argument February 14, 1957, by Mr. Israel and Mr. Auster]

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH, and JACKSON (retired), Associate Judges

WORLEY, Judge, delivered the opinion of the court:

This is an appeal by the importer from the judgment of the United States Customs Court, First Division, one judge dissenting, Abstract 60241, denying a petition for the remission of additional duties incurred for undervaluation on the entry of certain rolls of tracing cloth exported from England. The merchandise was entered at various prices per roll of 24 yards, less 2½ per centum discount, plus packing. The appraiser advanced the value by applying the same price to rolls of 20 yards, less 2½ per centum discount, plus packing, resulting in an advance of approximately 20 per cent.

The pertinent portion of the applicable statute reads:

Sec. 489. ADDITIONAL DUTIES.

* * * Such additional duties shall not be construed to be penal and shall not be remitted nor payment thereof in any way avoided, except * * *, or in any case upon the finding of the United States Customs Court, upon a petition filed at any time after final appraisement and before the expiration of sixty days after liquidation and supported by satisfactory evidence under such rules as the court may prescribe, that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise.

The single witness for appellant, one Ambrose F. Reich, has been associated with the importer for 43 years, including 20 years as secretary. He testified that during those years, up until 1948, tracing cloth from England had always been imported in rolls 24 yards in length; that the price paid was based on that length; and that the instant shipment, ordered in 1946, was but one of a large number coming through from time to time.

On or about January 14, 1948, appellant received a letter from Manchester, England, domicile of the exporter, dated January 7, 1948, from which we quote the following excerpts:

\* \* \* we have decided from the 19th January, 1948 that all our Tracing Cloths will be supplied in rolls of *20 yards* instead of 24 yards as hitherto. In view of this, kindly say whether you wish us to increase any orders for 24 yard rolls by one fifth.

Owing to the cumulative cost of cloth, raw materials and labour, we have been compelled to revise the prices of Tracing Cloths and Pencil Cloths, as follows:—

    IMPERIAL TRACING CLOTH. 18''_____ 36/9d. per
        20 yards.

      \*      \*      \*      \*      \*      \*      \*

These new prices will be charged for all goods *invoiced on and after January 19th 1948.* (Last italics supplied.)

The merchandise was invoiced in England by the exporter on January 15, 1948, four days before the price advance, consequently the price to the importer was not affected by the change in policy noted in the letter. However, the goods were not actually exported from England until January 24, five days after the change in price, and nine days after they were invoiced. Although the dutiable value depends upon the price prevailing on the export date of January 24, 1948, which was the new price set forth in the exporter's letter, the goods were entered at the old price. The appraiser, learning of the price change from other sources, advanced the value.

In effect, Reich's testimony was that, since the exporter's letter referred to rolls of 20 yards length rather than the usual 24 yard length, and to invoice dates beginning with January 19, 1948, whereas the instant merchandise was in 24 yard rolls and invoiced January 15, 1948, he regarded it as a completed transaction and did not think the letter had any bearing on that particular order and, consequently, did not call it to the attention of the appraiser. He further testified that the price at which entry was made had prevailed for more than a year, and that he had no intention of concealing any material facts or evidence or of defrauding the United States of any revenue.

In connection with these matters, Reich testified as follows:

Q. Did you consider that this letter had any bearing on the shipment that you received? A. None whatever, sir.

Q. The merchandise was different? A. The merchandise was different. It didn't come within the scope of that particular letter, because the merchandise was different in length and the date, the effective date of that letter was subsequent to the date of the invoice covering the shipment in question, which was 24-yard rolls.

Q. You did not call this to the attention of the Appraiser for the reasons that you stated, is that correct? A. That is right.

Q. And when the Appraiser, I believe Mr. Nathanson, called at your place of business sometime in May of 1948, did you give him a photostatic copy of this

letter? A. We gave him our files. Now I am not sure whether he has a photo-static copy or another copy, but he has knowledge of this.

Q. You made your files available? A. Yes.

Q. Now, in making this entry, did you have any intention of defrauding the United States of any revenue? A. None.

Q. Or concealing any facts or any evidence, or suppressing any facts, or holding back anything from duly constituted Customs Officials? A. None whatsoever, sir.

Cases involving interpretation of section 489 of the Tariff Act of 1930 and of the corresponding section of the Act of 1922 have been frequently before this court. The following excerpt from an early case, *Glendenning McLeish & Co.* v. *United States*, 13 Ct. Cust. Appls. 389, T. D. 41320, contains what we think is a proper statement of some of the principles involved:

We have had occasion in several instances to review the judgments of the Board of General Appraisers in remission cases since the approval of the Tariff Act of 1922. *Each case has presented a state of facts peculiar to itself and it has, therefore, been necessary to dispose of each according to the ultimate conclusion arrived at after a consideration of them. To announce general principles applicable to all such cases is difficult and in some respects impossible. But we have said that the issue principally involved in such cases is the good faith and intentions of the importer.* United States v. American Metal Co., 12 Ct. Cust. Appls. 440. If an importer has no information and knows of nothing which would raise a doubt in the mind of a *reasonable and prudent man* as to the correctness of the market value of purchased goods as stated by him, then the price paid for them in the ordinary course of business may be accepted by him as their true market value. *Lee & Co.* v. *United States*, 13 Ct. Cust. Appls. 269, T. D. 41205. If, however, he represents his goods to have a certain value and has at the time no reasonable grounds for believing his statements to be true, or if his representations are made with reckless disregard of their truthfulness, or if there are circumstances which would put *a reasonable and prudent man* on inquiry, and he makes no such inquiry, then the importer has not sustained the burden placed upon him by the statute. *Finsilver, Still & Moss* v. *United States*, 13 Ct. Cust. Appls. 332, T. D. 41250.

\* \* \* \* \* \* \*

But it is argued by the Government that a remission can not be ordered except upon satisfactory evidence and that satisfactory evidence is evidence that convinces the mind beyond a reasonable doubt. We are aware that courts have in some instances attached such a meaning to the term "satisfactory evidence." We have not, however, followed these holdings in remission cases. In *Linen Thread Co.* v. *United States*, 13 Ct. Cust. Appls. 301, T. D. 41220, we thus defined "satisfactory evidence":

Proof of the circumstances and conditions, and a full and candid explanation thereof is required. Anything less than that is not sufficient. (Italics supplied.)

In that case the importer based the value of certain goods, shipped March 22, 1924, and entered April 3, 1924, on a price list dated February 5, 1924, without making further inquiry. The court, in overruling the Board of General Appraisers, found that "In the case before us there were no circumstances shown which would put a

reasonable and prudent man upon inquiry as to the reliability of the price list used by the importer in making his entry."

The question as to the showing necessary to justify a remission of additional duties was thoroughly considered by our late Chief Judge, Finis Garrett, in the majority decision of *United States* v. *W. J. Westerfield*, 40 C. C. P. A. (Customs) 115, C. A. D. 507, which is the authority primarily relied on by the Customs Court in support of its decision in the instant case. However, it seems to us that the facts here are clearly distinguishable from those of the *Westerfield* case. There the importer first received an invoice showing a foreign value of $3.85 per unit, and later a second invoice showing a value of $3.10 per unit, accompanied by the following letter:

> We have pleasure in enclosing a new set of consular invoice No. 391 certified 23rd. February 49 replacing invoice No. 196 of 28th. January 49.
> As you see, the current price for home consumption has been changed to $3.10 also for this shipment. We feel sure that this new invoice will reach you before the arrival of the goods and this should help you saving a lot of duty.

The majority held that, under such circumstances and regardless of the obvious inexperience of the importer, a prudent person would not have overlooked the fact that two different values had been assigned to the same goods, and concluded that the importer should have made inquiry as to which value was correct.

In the instant case, however, the pertinence of the information in the hands of the importer was by no means as apparent as in the *Westerfield* case.

The case of *United States* v. *Pacific Coast Feather Company*, 40 C. C. P. A. (Customs) 141, C. A. D. 510, also cited below, is likewise distinguishable. There, in addition to an apparent lack of cooperation on the part of the importer, and, as in the *Westerfield* case, two prices were involved. It was there held that

> It is obvious that prior to the time of entry the importer knew the foreign price list of the shipper and the cablegrams hereinbefore noted with respect to the merchandise were in its possession. It is clear that it must have had the consular invoice which was certified in Shanghai March 9, 1949, showing the actual purchase price for the shipment and certainly it knew the true purchase price of the involved merchandise.

The sole issue here, as in all remission cases, is whether the importer has discharged, by satisfactory evidence, the burdens imposed by section 489. That, in turn, requires consideration of the facts as they relate to what a reasonable and prudent person would be expected to do under the same or similar circumstances, but does not, as pointed out in the *Glendenning* case, require proof beyond a reasonable doubt.

While in the instant case Reich's experience was clearly such as to make him competent to prepare entries of the kind involved, at the

same time the evidence is undisputed that he was candid in dealing with the appraiser and, in our opinion, did not intentionally withhold any information which he thought was material to a proper entry. We think the facts support the following views of the dissenting judge:

\*       \*       \*       \*       \*       \*       \*

I have read the record carefully, and it seems to me that it shows a situation which to a businessman of ordinary reason and prudence would indicate that the shipment involved was the last shipment which would be made at the price which had been in effect for over a year. The letter referred to future shipments, made after January 19, 1948, which would be in 20-yard rolls. The involved shipment was in 24-yard rolls. The price per roll was not changed, but the length of the roll was changed, thus changing the per yard price.

To my mind, an ordinary businessman would consider that he had gotten "under the wire" with his order at the old price. There does not seem to be any question but that payment for the shipment was made on the basis of the old price. The secretary of the petitioner, who was the responsible officer who testified at the trial, frankly admitted that, although his firm had been importing merchandise for 40 years, the fact that the date of *exportation*, and not the date of purchase, invoice, or lading, controlled for customs valuation did not enter his mind at the time. This mental lapse on a customs technicality, it seems to me, should not deny remission. The fact is, from a *business* standpoint, he was warranted in believing that the old price represented the correct value, while from a *customs* standpoint he was not. The standard imposed, however, is that of a reasonable and prudent businessman, and not a skilled customs expert. (Italics quoted.)

We are not unmindful of the fact that the evaluation of the testimony by the judge before whom it was taken, and who wrote the majority opinion, is entitled to weight. However, it does not appear the majority challenges the veracity of the witness, but merely holds it was incumbent on him to take more precautions than were actually taken.

As pointed out in the *Westerfield* decision, intent to defraud, or lack of it, is an extremely difficult matter to prove. Normally, the only direct evidence available in remission cases is the testimony of the importer or his agent, which, standing alone, obviously cannot be accepted as sufficient. However, where, as here, such testimony is reasonable and consistent with the extrinsic facts, we think it may properly be accepted.

In our opinion, the circumstances of this case are such as must have been contemplated by the Congress when it enacted section 489 of the 1930 Tariff Act. If not, then it is difficult to imagine a set of circumstances which could meet the requirements of that section. In view of that conclusion, it becomes necessary to *reverse* the judgment appealed from.

JACKSON, J., Retired, recalled to participate herein in place of COLE, J., absent because of illness.