**Mario G. CALUZA, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 90–0818.

United States Court of Veterans Appeals.

Decided April 12, 1995.

Mario G. Caluza, pro se.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Craig M. Kabatchnick were on brief, for appellee.

Before HOLDAWAY, IVERS, and STEINBERG, Judges.

STEINBERG, Associate Judge:

The appellant, Mario G. Caluza, appeals a February 25, 1993, Board of Veterans' Appeals (Board or BVA) decision denying service connection for residuals of a shell-fragment wound (SFW) to his right leg. The appellant filed an informal brief, and the Secretary filed a brief. For the reasons that follow, the Court affirms the Board decision.

## I. Background

The pro se appellant, World War II veteran Mario G. Caluza, had qualifying active-duty service (missing status and recognized guerilla service) in the Philippine Army from November 1944 to November 1945. Record (R.) at 5, 17, 22, 27; Supplemental (Suppl.) R. at 14. A September 1945 service medical record (SMR) did not indicate any musculo-skeletal defects. R. at 1, 18. An August 1947 affidavit signed by the veteran indicated he had received no wounds in service. R. at 24.

In September 1970, the veteran filed with a Veterans' Administration (now Department

of Veterans Affairs) (VA) regional office (RO) an application for VA compensation or pension for a 1945 right-foot wound; he stated that he had been treated for the wound in 1945 at the Army hospital at Camp Spencer, Luna, La Union, in the Philippines. Suppl. R. at 2–5. In a 1970 letter to the VARO, the veteran stated that he had been wounded in the "middle part" of his "right foot" during an encounter with the enemy; that he had been treated for a "few months" at the Army clinic at Camp Spencer; and that he was currently experiencing difficulty walking because of his injury. R. at 30. In October 1970, the RO requested the veteran's SMRs. Suppl. R. at 13. The veteran submitted in January 1971 a December 1970 letter from a private physician, Dr. Acosta, who diagnosed "[r]heumatoid [a]rthritis, knee and ankle joints, right. Hypertension, moderate." Suppl. R. at 10. A January 1971 RO decision denied service connection for a right-foot injury, noting that the veteran's induction medical examination report and other SMRs were "not available"; that a September 1945 "discharge examination" had indicated no significant abnormalities; that the veteran had not claimed any wounds or illnesses in his August 1947 "processing affidavit"; and that Dr. Acosta had diagnosed rheumatoid arthritis in December 1970. Suppl. R. at 17. No appeal of the January 1971 RO decision is contained in the record on appeal.

In August 1987, the veteran again filed with the RO an application for service connection for a "1943" shrapnel wound to the "right lower leg". R. at 32–35. He stated that he had been treated at a "[h]ospital on the front line". *Ibid.* The veteran submitted to the RO in April 1988 the following documents: (1) an April 1988 notarized "joint affidavit" signed by Cornelio Corpuz and Modesto Nabua, who stated that they were "former comrade[s]-in-arms" of the veteran; that the veteran had received a right-leg wound in an engagement with the enemy at Bessang Pass and had been taken to the "Army Camp Suyo" and later transferred to Camp Spencer; that he had received private medical treatment for the injury following his discharge in 1945; and that he was "still suffering pain sustained during the encounter" (R. at 38); (2) an undated medical certificate from Dr. Vito stating that he had first seen

the veteran in May 1985; that the veteran suffered from (inter alia) generalized rheumatoid arthritis, limping gait, persistent pain, and peripheral numbness of the right leg due to a shrapnel wound; and that these conditions were "of long standing" and "may be attributable to wounds or [trauma] experienced during and immediately after" World War II (R. at 39); and (3) an April 1988 x-ray examination report diagnosing "[o]steoarthritis [c]hanges [r]ight [t]ibio-fibula" (R. at 40).

In a July 1988 decision, the RO determined that the veteran had not submitted new and material evidence to reopen his claim because no medical records had shown a right-leg injury during service and that, "[i]n the absence of complete clinical records showing diagnosis of or treatment during service for the veteran's claimed conditions, the statements of others are insufficient to substantiate the claim for service incurrence". R. at 43. In August 1988, the veteran filed with the RO a letter stating that, due to his financial situation, after his discharge he "was only treated by medicinal plants". R. at 47. The veteran attached the following documents to his August 1988 letter: (1) an August 1988 notarized "joint affidavit" signed by Ceferino Corpuz and Bernardo Llarenas stating that the veteran had been treated only with medicinal plants following his discharge from service; that between 1970 and 1980 the veteran had been treated by a physician who prescribed different medications for the "intense and persistent pain [i]n his right leg"; and that the veteran was "still suffering from pain sustained during World War II" (R. at 48); and (2) a July 1958 medical certificate signed by Dr. Martinez, which diagnosed "[g]eneral debility and [p]ain in the right leg due to an old wound in the left [sic] leg" and indicated that the veteran had suffered right-leg pain and difficulty walking which the veteran had attributed to a shrapnel wound (R. at 49).

The RO apparently reopened the veteran's claim, and, in a September 1988 decision, denied the claim because of the absence of official records showing a diagnosis of or treatment for a right-leg injury during service. R. at 51, 53. The veteran filed a

February 1989 Notice of Disagreement. R. at 55. In July 1989, he filed a VA Form 1–9 (Appeal to the BVA) (R. at 63), and attached the following documents: (1) a July 1989 notarized statement by the veteran asserting that he had not carefully read the 1947 "processing affidavit" that he had signed at his discharge from service and that he had been wounded in an encounter with the "Japanese Forces in Bessang Pass" (R. at 67); (2) a July 1989 notarized letter signed by Vincente Galban, who stated that he had served in the same company with the veteran and that "during one of our encounter[s] with Japanese Forces ... in Bessang Pass ... a mortar shell fired by the enemy exploded in our line killing several and wounded several others of our comrades in arms; that Pvt. Mario G. Caluza was among the wounded, who was hit by a shrapnel on his right leg front portion...."; that he had had treatment at the battalion aid station (which never issued official medical records) for a few days before being recalled to the front lines; and that the veteran had often afterward complained of right-leg pain but was "forced to serve[ ] in the front lines until after General Yamashita surrendered" (R. at 68); (3) a July 1989 notarized letter from Pedro Frigillana, who stated that he had been assigned to a company that had joined the veteran's company in the battle at Bessang Pass; that the veteran had been wounded by shrapnel hitting the front portion of his right leg between the knee and the ankle; and that he had been carried in a litter to the temporary battalion aid station, "where no official medical records ... were ever prepared and issued to the patient" (R. at 69); (4) a July 1989 partially illegible notarized letter from Dr. Abena, who stated that the veteran had seen him in August 1946 and December 1948 for a right-leg injury caused by shrapnel (R. at 70); (5) a picture of the veteran (R. at 71); and (6) an article about the battle at Bessang Pass, which describes the battalions involved and the first-aid care rendered at battalion aid stations (R. at 72–78). A September 1989 RO decision confirmed and continued the previous denial. R. at 80, 85.

The veteran filed with the RO in October 1989 the following documents: (1) An October 1989 notarized letter from Dr. Abena, who stated that, after having gone through his "old clinical records and personal notes", he had found that on August 20, 1946, he had treated the veteran for a shrapnel wound to the right leg that was "a superficial scar, discolorated, swollen, and adherent with injury to Muscle Group XII on the mid tibio febular [sic] portion of his right leg which injury severely affected his [d]orsiflexion with characteristic severe pain on the knee joint" (R. at 89); (2) an October 1989 notarized letter from Pedro Frigillana, who stated that in early April 1945, during the battle at Bessang Pass, a mortar shell had exploded near his line and "after several minutes I saw [the veteran] limping to his right being aided by a comrade-in-arm[s] as they passed some 2 meters away from my position" (R. at 90); and (3) an October 1989 notarized letter from Vincente Galban, who stated that early in April 1945 a mortar shell had fallen on his line and "immediately after the said explosion I clearly saw [the veteran] fell [sic] and got hold of his right leg and then he limped back to where I am positioned ... [and] I aided him to the temporary Battalion Aid Station" (R. at 91).

In denying the claim in November 1989, the RO stated: "The evidence is insufficient to establish [service connection] ... in the absence of official service records showing diagnosis of or treatment for this condition". R. at 94. In December 1989, the RO confirmed and continued the rating decisions of September 1988 and September and November 1989. R. at 100. In an April 10, 1990, decision, the BVA denied service connection for SFW residuals in the right leg. R. at 105–06. The veteran appealed to this Court, and in a July 17, 1992, unpublished memorandum decision, the Court vacated the BVA decision and remanded the matter, holding that the Board had provided an inadequate statement of reasons or bases for its decision and had misapplied 38 U.S.C. § 1154(b) and its implementing regulation, 38 C.F.R. § 3.304(d) (1994). The Court retained jurisdiction and ordered the Secretary to file with the Clerk of the Court a copy of any Board decision on remand.

In a February 25, 1993, decision following remand, the BVA denied entitlement to service connection for SFW residuals in the

right leg. R. at 6. The Board stated that the Court had directed the Board to readjudicate on the basis of all the evidence and material of record, that the claim was well grounded, and that there was no duty to assist the veteran because he had not indicated that there were additional records to be obtained. R. at 6. The Board noted that the 1970 claim was for a wound to the right foot, whereas the veteran's current claim was for a wound to the "anterior midtibial" area. R. at 7. As for the July 1958 medical certificate from Dr. Martinez, the Board found that it was "not an original document, [did] not contain any clinical findings descriptive or characteristic of residuals of a shrapnel wound", and was "of little probative value". *Ibid.* As to the medical certificate from Dr. Vito, the Board noted that he had stated that the wound might have occurred "after" World War II. R. at 9. Regarding the July and October 1989 affidavits from Dr. Abena stating that he had treated the veteran for a wound in 1946, the Board noted that the 1945 physical, the 1947 affidavit, and the 1970 report from Dr. Acosta made no mention of a shrapnel injury. *Ibid.*

The Board stated that, unlike conditions such as hearing loss or a psychiatric disorder which may become symptomatic some time after they are incurred, a gunshot wound should have been noted on contemporaneous documents. R. at 10. As to the lay statements, the Board noted that some stated that the veteran had been treated only at the battalion aid station, while others reported that he had later been transferred to Camp Spencer. The Board stated that the veteran had claimed in 1970 that he had been treated at Camp Spencer for a "few months", and that if the wound had been that severe it would have been noted on the September 1945 examination. *Ibid.* The Board concluded that the evidence submitted by the veteran was not credible, and therefore was not "satisfactory" under section 1154(b), in that the other evidence "clearly rebutted" the incurrence of any SFW to the right leg during service. R. at 11. A timely appeal to this Court followed.

## II. Analysis

### A. *Generally Applicable Law*

■ Section 5107(a) of title 38, U.S.Code, provides in pertinent part: "[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." The Court has defined a well-grounded claim as follows: "A well[-]grounded claim is a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [section 5107(a) ]." *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). In addition, the Court held in *Tirpak v. Derwinski*, 2 Vet.App. 609, 611 (1992) (quoting section 5107(a)), that to be well grounded a claim must be accompanied by supportive evidence and that such evidence "must 'justify a belief by a fair and impartial individual' that the claim is plausible." Where the determinative issue involves either medical etiology or a medical diagnosis, competent medical evidence is required to fulfill the well-grounded-claim requirement of section 5107(a); where the determinative issue does not require medical expertise, lay testimony may suffice by itself. *See Lathan v. Brown*, 7 Vet.App. 359, 365 (Jan. 26, 1995) (citing *Grottveit v. Brown*, 5 Vet.App. 91, 93 (1993)); *see also Magana v. Brown*, 7 Vet. App. 224, 227 (1994); *Espiritu v. Derwinski*, 2 Vet.App. 492, 494–95 (1992). Lay evidence may provide sufficient support for a claim of service connection, and it is error for the Board to require medical evidence to support that lay evidence. *See Layno v. Brown*, 6 Vet.App. 465, 469 (1994) (citing *Horowitz v. Brown*, 5 Vet.App. 217, 221–22 (1993); *Ascherl v. Brown*, 4 Vet.App. 371, 376 (1993); *Rhodes v. Brown*, 4 Vet.App. 124, 126–27 (1993); *Cuevas v. Principi*, 3 Vet.App. 542, 547–48 (1992); *Culver v. Derwinski*, 3 Vet. App. 292, 297–98 (1992); *Cartright v. Derwinski*, 2 Vet.App. 24, 25 (1991)). The truthfulness of evidence is presumed in determining whether a claim is well grounded. *See Robinette v. Brown*, —— Vet.App. ——, No. 93–985, slip op. at 10–11, 1994 WL 495078 (Sept. 12, 1994), *mot. for recons. granted on other grounds* (Oct. 21, 1994); *King v. Brown*, 5 Vet.App. 19, 21 (1993). The threshold of plausibility to make a claim well grounded is considerably lower than the threshold for new and material evidence to

justify reopening a claim. *See Lathan,* 7 Vet.App. at 365 (citing *Robinette, supra* ). A Board determination whether a claim is well grounded is a conclusion of law subject to de novo review by the Court under 38 U.S.C. § 7261(a)(1). *See Grivois v. Brown,* 6 Vet. App. 136, 139 (1994); *Grottveit, supra.*

■ Service connection for VA disability compensation purposes will be awarded to a veteran who served on active duty during a period of war or during a post-December 31, 1946, peacetime period, for any disease or injury that was incurred in or aggravated by a veteran's active service or for certain diseases that were initially manifested to a degree of 10% or more within a specified presumption period after the date of separation from service. *See* 38 U.S.C. §§ 1110, 1112(a), 1131, 1137; 38 C.F.R. §§ 3.303(a), 3.306, 3.307 (1994). When a disease is first diagnosed after service, service connection may nevertheless be established by evidence demonstrating that the disease was in fact "incurred" during the veteran's service, or by evidence that a presumption period applied. *See Combee v. Brown,* 34 F.3d 1039, 1042 (Fed.Cir.1994) ("[p]roof of direct service connection ... entails proof that exposure during service caused the malady that appears many years later"); *Cosman v. Principi,* 3 Vet.App. 503, 505 (1992) ("even though a veteran may not have had a particular condition diagnosed in service, or for many years afterwards, service connection can still be established"); *see also* 38 C.F.R. § 3.303(d); *Traut v. Brown,* 6 Vet.App. 495, 497 (1994) (applying seven-year presumption period for manifestation of multiple sclerosis to a degree of 10% or more); *Goodsell v. Brown,* 5 Vet.App. 36, 43 (1993) (applying three-year presumption period for pulmonary tuberculosis manifested to a degree of 10% or more); *Godfrey v. Derwinski,* 2 Vet.App. 352, 356 (1992). A service-connection claim must be accompanied by evidence which establishes that the claimant currently has the claimed disability. *See Rabideau v. Derwinski,* 2 Vet.App. 141, 144 (1992); *see also Brammer v. Derwinski,* 3 Vet.App. 223, 225 (1992) (absent "proof of a present disability there can be no valid claim").

Contrary to the RO's November 1989 statement that seemed to require evidence of service incurrence in "official service rec-

ords" (R. at 94), the law, in 38 U.S.C. § 1154(b), specifically allows combat veterans, in certain circumstances, to use lay evidence to establish service connection of a disease or injury. *See, e.g., Jensen v. Brown,* 19 F.3d 1413, 1416–17 (Fed.Cir.1994); *Chipego v. Brown,* 4 Vet.App. 102, 105 (1993); *Sheets v. Derwinski,* 2 Vet.App. 512, 515 (1992); *Smith (Morgan) v. Derwinski,* 2 Vet. App. 137, 140 (1992). Section 1154(b) provides:

> In the case of any veteran who engaged in combat with the enemy in active service with a military, naval, or air organization of the United States during a period of war, campaign, or expedition, the Secretary shall accept as sufficient proof of service-connection of any disease or injury alleged to have been incurred in or aggravated by such service satisfactory lay or other evidence of service incurrence or aggravation of such injury or disease, if consistent with the circumstances, conditions, or hardships of such service, notwithstanding the fact that there is no official record of such incurrence or aggravation in such service, and, to that end, shall resolve every reasonable doubt in favor of the veteran. Service-connection of such injury or disease may be rebutted by clear and convincing evidence to the contrary. The reasons for granting or denying service-connection in each case shall be recorded in full.

38 U.S.C. § 1154(b). The regulation implementing section 1154(b) is at 38 C.F.R. § 3.304(d).

■ Pursuant to 38 U.S.C. § 5107(a), once a claimant has submitted a well-grounded claim, the Board is required to assist that claimant in developing the facts pertinent to the claim. *See* 38 C.F.R. § 3.159 (1994); *Littke v. Derwinski,* 1 Vet.App. 90, 91–92 (1990). The duty to assist may, in an appropriate case, include the duty to seek to obtain pertinent private medical records. *See Masors v. Derwinski,* 2 Vet.App. 181, 186–87 (1992); *Littke, supra.* Where the record does not adequately reveal the current state of the claimant's disability and the claim is well grounded, the fulfillment of the statutory duty to assist requires a thorough and

contemporaneous medical examination. *See Suttmann v. Brown*, 5 Vet.App. 127, 138 (1993); *Green (Victor) v. Derwinski*, 1 Vet. App. 121, 124 (1991). "If a diagnosis is not supported by the findings on the examination report or if the report does not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for evaluation purposes." 38 C.F.R. § 4.2 (1994); *see also Schafrath v. Derwinski*, 1 Vet.App. 589, 595 (1991).

 The BVA is required to provide a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Masors*, 2 Vet.App. at 188; *Gilbert v. Derwinski*, 1 Vet.App. 49, 56–57 (1990). To comply with this requirement, the Board's statement of reasons or bases must account for the evidence which it finds to be persuasive or unpersuasive, analyze the credibility and probative value of all material evidence submitted by and on behalf of a claimant, and provide the reasons for its rejection of any such evidence. *See Gabrielson v. Brown*, 7 Vet.App. 36, 40 (1994); *Abernathy v. Principi*, 3 Vet.App. 461, 465 (1992); *Simon v. Derwinski*, 2 Vet.App. 621, 622 (1992); *Hatlestad v. Derwinski*, 1 Vet.App. 164, 169 (1991) (*Hatlestad I* ); *Gilbert, supra*. The Court reviews BVA factfinding under a "clearly erroneous" standard; "if there is a 'plausible' basis in the record for the factual determinations of the BVA, . . . [the Court] cannot overturn them". *Gilbert*, 1 Vet.App. at 53; 38 U.S.C. § 7261(a)(4).

Where an appellant has not been harmed by an error in a Board determination, the error is not prejudicial. *See* 38 U.S.C. § 7261(b) ("[i]n making the determinations under subsection (a) of this section, the Court shall take due account of the rule of prejudicial error"); *Yabut v. Brown*, 6 Vet. App. 79, 83 (1993); *Godwin v. Derwinski*, 1 Vet.App. 419, 427 (1991).

## B. Application of Law to Facts

### 1. Well-grounded Claim

 As stated above, in order for a claim to be well grounded, there must be competent evidence of current disability (a medical diagnosis), *see Brammer* and *Rabideau*, both *supra*; of incurrence or aggravation of a disease or injury in service (lay or medical evidence), *see Layno* and *Cartright*, both *supra*; and of a nexus between the in-service injury or disease and the current disability (medical evidence), *see Lathan* and *Grottveit*, both *supra*. The nexus requirement may be satisfied by a presumption that certain diseases manifesting themselves within in certain prescribed periods are related to service. *See Traut* and *Goodsell*, both *supra*.

 Presuming the truthfulness of evidence for the purpose of determining whether the claim is well grounded, as required by *Robinette* and *King*, both *supra*, the statements submitted by the veteran since the 1971 RO decision contain medical evidence of a current right-leg disability (Dr. Martinez's medical certificate diagnosing general debility and pain in the veteran's right leg (R. at 49); Dr. Acosta's December 1970 letter diagnosing right-knee and ankle rheumatoid arthritis (Suppl.R. at 10); Dr. Vito's undated medical certificate that in May 1985 the veteran suffered from generalized rheumatoid arthritis, limping gait, persistent pain, and peripheral numbness of the right leg (R. at 39); and the April 1988 x-ray report diagnosing right "[t]ibio-fibula" osteoarthritic changes (R. at 40)); competent lay statements attesting to an in-service injury (the April and August 1988 "joint affidavits" signed by fellow servicemembers Corpuz and Nabua (R. at 38), and Corpuz and Llarenas (R. at 48); the veteran's July 1989 statement that he had been wounded in a battle in Bessang Pass (R. at 67); and the July and October 1989 statements from fellow servicemembers Galban and Frigillana (R. at 68–69, 90–91)); and medical evidence that the current condition was related to the in-service injury (Dr. Abena's July 1989 notarized letter that he had treated the veteran in August 1946 and December 1948 for a right-leg injury caused by shrapnel (R. at 70); Dr. Martinez's 1958 diagnosis that the "general debil-

ity and [p]ain in the right leg" was due to an old wound in the left [sic] leg (R. at 49); and Dr. Vito's undated medical certificate stating that the veteran's right-leg debility was "of long standing" and "may be attributable to wounds or trauma experienced during and immediately after" World War II (R. at 39)). Presuming the truthfulness of the evidence, the Court holds that it made the claim well grounded. *See Lathan* and *Robinette,* both *supra.* The BVA on remand thus correctly adjudicated the claim on the merits upon consideration of all the evidence, as the Court's 1992 memorandum decision had directed.

### 2. *38 U.S.C. § 1154(b)*

■ Section 1154(b) deals with the question whether a particular disease or injury was incurred or aggravated in service—that is, what happened then—not the questions of either current disability or nexus to service, as to both of which competent medical evidence is generally required. *See Brammer, Rabideau, Lathan,* and *Grottveit,* all *supra.* By providing that "lay or other evidence" that meets the requirements of section 1154(b) shall be accepted as "sufficient proof of service-connection of any disease or injury alleged to have been incurred in or aggravated by ... service", section 1154(b) relaxes the evidentiary requirements for adjudication of certain combat-related VA-disability-compensation claims—both as to the evidence that a claimant must submit in order to make such a claim well grounded and as to the evidence necessary in order to establish service connection of a disease or injury. The term "service-connection" is used in section 1154(b) to refer to proof of incurrence or aggravation of that disease or injury in service, rather than to the legal standard for entitlement to payments for disability. *See* 38 U.S.C. § 101(16) (defining "service connected" with respect to "disability" as meaning that "such disability was incurred or aggravated" in service); *cf.* 38 U.S.C. §§ 1113(a), (b), 1116, 1133, 1154(a).

In *Smith,* the Court noted that section 1154(b) was enacted in 1941 to enable veterans who had been engaged in combat with the enemy to use, under certain circumstances, lay evidence to prove incurrence of a particular disease or injury in service.

*Smith,* 2 Vet.App. at 139. The purpose of section 1154(b), as noted in the legislative history, was "to overcome the adverse effect of a lack of official record of incurrence or aggravation of a disease or injury and treatment thereof". *Id.* at 140 (citing H.R.Rep. No. 1157, 77th Cong., 1st Sess. (1941), *reprinted in* 1941 U.S.C.C. Service 1035). As the Federal Circuit stated recently: "Section 1154 makes it abundantly clear that special considerations attend the cases of combat veterans ... [and] evinces a strong intent to provide generously for the service-connected disabilities of combat veterans by liberalizing the methods of proof allowed." *Jensen,* 19 F.3d at 1416–17.

■ *a. Effect of section 1154(b):* In allowing a combat veteran to use "lay or other evidence" to prove service incurrence or aggravation of conditions alleged to have been incurred in combat, section 1154(b) has three evidentiary elements: (1) The evidence must be "satisfactory"; (2) it must be "consistent with the circumstances, conditions, or hardships of [combat] service"; and (3) it can prevail "notwithstanding the fact that there is no official record" of the incurrence or aggravation of the disease or injury during service. There might appear to be some conflict in the Court's jurisprudence as to what happens when the three elements of section 1154(b) are satisfied. In *Smith,* the Court stated that neither section 1154(b) nor its implementing regulation, § 3.304(d), "create[s] a presumption in favor of combat veterans in determinations of service connection". *Smith,* 2 Vet.App. at 140. In *Horvath v. Derwinski,* 2 Vet.App. 240, 241 (1992), the Court referred to section 1154(b) as establishing a presumption in favor of the veteran when the three statutory elements were present. In neither case was the characterization of whether there is such a "presumption" necessary to the Court's holding, for in each case the Court vacated the BVA decision on appeal because it failed to apply section 1154(b) properly. *See ibid.; Smith,* 2 Vet.App. at 141. Also, there may be no real conflict between the Court's pronouncements, because *Smith* can be read as stating no more than that any presumption established is not *conclusive,* that is, that it is rebuttable

by "clear and convincing evidence to the contrary".

In any event, after further consideration, the Court concludes today that the *effect* of section 1154(b), whether or not it is labelled as due to a "presumption", is that when in the case of a combat veteran the three section 1154(b) elements are satisfied section 1154(b)'s relaxation of adjudication evidentiary requirements dictates that the veteran's "lay or other evidence" be accepted as sufficient proof of service incurrence or aggravation unless there is "clear and convincing evidence" that the disease or injury was *not* incurred or aggravated in service or during an applicable presumption period. This reading comports most logically and clearly with the words of section 1154(b), which do not include the word "presumption". The Court notes the following discussion of the section by the U.S. Court of Appeals for the Federal Circuit in *Jensen:*

> Once this showing has been made, the government has the burden to rebut by clear and convincing proof. . . .
>
> Placing this burden on the government is consistent with the congressional intent to give veterans liberalized methods of proving [service connection and] . . . comports with the general rule that where evidence required to prove a fact is peculiarly within the knowledge and competence of one of the parties, fairness requires that party to bear the burden of coming forward. *See Campbell v. United States,* 365 U.S. 85, 81 S.Ct. 421, 5 L.Ed.2d 428 (1961)..

*Jensen,* 19 F.3d at 1417 (discussing 38 U.S.C. §§ 1153, 1154; 38 C.F.R. § 3.306). Although the opinion speaks in terms of a burden of coming forward being shifted to the government, the Court finds the concept of VA's adjudication evidentiary requirements being relaxed more in keeping with the "nonadversarial nature" of the VA adjudication system, *see Douglas v. Derwinski,* 2 Vet.App. 435, 442–43 (1992) (en banc), in which the Department is not a party trying to disprove a claim; indeed, VA's special obligations to assist claimants are the very antithesis of adversarial claims adjudication. *See, e.g.,* 38 U.S.C. § 5107(a) (once well-grounded claim is submitted, Secretary shall assist claimant in "developing the facts pertinent to the claim");

§ 5107(b) (when there is approximate balance of positive and negative evidence on merits of claim, benefit of doubt will be given to claimant); § 7722(c), (d) (Secretary has duty to provide information on VA benefits and services, and aid and assistance in preparation and presentation of claims); 38 C.F.R. §§ 3.103, 3.159 (1994).

*b. Three adjudication rules:* In addition, section 1154(b) includes three adjudication rules for the application of section 1154(b) to lay evidence in the case of a veteran who was "engaged in combat with the enemy": (a) "[E]very reasonable doubt" is to be resolved "in favor of the veteran" in determining if the three elements are met; (b) service connection (incurrence or aggravation in service) "may be rebutted by clear and convincing evidence to the contrary"; and (c) the "reasons for" the decision on service connection (that is, service incurrence or aggravation of a disease or injury, as explained above) "shall be recorded in full".

*(i) "Reasonable doubt" rule:* The first, rule (a), relating to resolving "every reasonable doubt" in favor of the veteran, requires some examination. Section 5107(b) provides that, as to any claim for VA benefits, when the evidence is in equipoise "the benefit of the doubt in resolving each . . . issue shall be given to the claimant". *See Gilbert,* 1 Vet.App. at 54 (unless preponderance of evidence is against claim, it must be granted). This raises the question whether and, if so, how section 1154(b) "reasonable doubt" differs from section 5107(b) "benefit of the doubt". The requirement that VA resolve reasonable doubt in favor of the veteran seems the same in both sections. *See* 38 C.F.R. § 3.102 (1994) (using "reasonable doubt" and codified into law by section 5107(b) according to the legislative history of section 5107(b) discussed below).

Section 1154(b) seems different, however, in not expressly requiring, as does section 5107(b), that the evidence be in equipoise before the benefit of that reasonable doubt is given. The phrase "reasonable doubt" is defined in 38 C.F.R. § 3.102 as a doubt "which exists because of an approximate balance of positive and negative evidence". Hence, § 3.102 defines "reasonable doubt" as includ-

ing the section 5107(b) equipoise requirement. That "reasonable doubt" in § 3.102 conditions the "reasonable doubt" rule included in section 1154(b) is made clear by the regulation's stating: "The reasonable doubt doctrine is also applicable even in the absence of official records, particularly if the basic incident allegedly arose under combat, or similarly strenuous conditions, and is consistent with the probable results of such known hardships." 38 C.F.R. § 3.102.

Moreover, the legislative history of section 5107(b) indicates that § 3.102 correctly expresses the intent of Congress in enacting section 5107(b). The final agreement between the Senate and House of Representatives on the provision that became section 5107(b) was explained as follows in the explanatory statement on the compromise agreement on the Veterans' Judicial Review Act (VJRA), Pub.L. No. 100–687, Div. A, 102 Stat. 4105 (1988): "The Senate bill (section 101) and the House amendment (section 6) would amend chapter 51 of title 38 to add a section which would codify the burden of proof and reasonable doubt standards in VA claims adjudication proceedings currently provided for by regulation (38 C.F.R. [§§] 3.102 and 3.103)". *See* EXPLANATORY STATEMENT ON COMPROMISE AGREEMENT ON DIVISION A, Pub.L. No. 687, 100th Cong., 2d Sess. (1988), *reprinted in* 1988 U.S.C.C.A.N. 5782, 5834, 5835. Thus, the Court holds that, although section 1154(b) does not expressly state that the evidence must be in equipoise before the veteran receives the benefit of the doubt, section 1154(b) adjudication rule (a) is substantively identical to the benefit-of-the-doubt rule in section 5107(b) and so is applicable only when the evidence is in equipoise.

Against this background, § 3.102 is a valid exercise by the Secretary of his general rule-making authority under 38 U.S.C. § 501(a)(1), (4) to "prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and are consistent with those laws, including ... regulations with respect to the nature and extent of proof and evidence [and] ... the manner and form of adjudication". *See Sandoval v. Brown,* 7 Vet.App. 7, 9 (1994); *Russell v. Principi,* 3 Vet.App. 310, 313 (1992) (en banc) ("Secretary has very broad powers to 'prescribe ... regulations' "); *Duro v. Derwinski,* 2 Vet. App. 530, 531 (1992)). Similarly, the application of the "reasonable doubt" definition under section 5107(b) and § 3.102 to the "reasonable doubt" provision in section 1154(b) is consistent with the laws pertaining to VA benefits and adjudication and hence is also a valid rulemaking exercise under sections 501(a), 1154(b), and 5107(b).

■■■■■ *(ii) Clear and convincing evidence:* As stated above, once the veteran has presented evidence which, by application of section 1154(b)'s adjudication rule (a), has established the three elements of section 1154(b), section 1154(b)'s adjudication rule (b) comes into play and relaxes the adjudication evidentiary requirements, so that the lay evidence prevails unless clear and clear convincing evidence demonstrates that the disease or injury was not incurred or aggravated in service. "Clear and convincing evidence" is an intermediate standard of proof between "beyond a reasonable doubt" (as applied in criminal cases) and a "fair preponderance of the evidence". *See Olson v. Brown,* 5 Vet.App. 430, 434 (1993) (citing *Gilbert,* 1 Vet.App. at 53–54). In reviewing a Board determination as to application of the "clear and convincing evidence" burden of proof, the standard of review in this Court would be the standard for reviewing a Board decision on a mixed question of law and fact—the application of the "clear and convincing" legal standard to the facts of the particular case—that is, whether the Board determination is "arbitrary and capricious". *See Butts v. Brown,* 5 Vet.App. 532, 539 (1993) (en banc) (holding that selection of a diagnostic code is a question of application of law to facts and is subject to Court review on arbitrary-and-capricious standard). *But cf. Bagby v. Derwinski,* 1 Vet.App. 225, 227 (1991) (whether facts are sufficient to meet legal standard for "clear and unmistakable evidence" to rebut presumption of soundness is question of law subject to de novo Court review).

*(iii) Recording reasons for decision:* As to adjudication rule (c), the requirement in the last sentence of section 1154(b) that the Board shall "record in full" its reasons for granting or denying service connection in

each case was superseded by the later enactment in the VJRA in 1988 of the substantively identical and global provisions of 38 U.S.C. § 7104(d)(1), which require the Board, as a general matter, to provide an adequate statement of "reasons or bases" for its decision as to *all* material findings of fact and conclusions of law. VJRA, § 205, 102 Stat. at 4111; *see Gilbert,* 1 Vet.App. at 57 (Board must identify those findings it deems crucial to its decision and account for the evidence which it finds to be persuasive or unpersuasive); *see also Gabrielson, supra.*

**c. Satisfactory evidence:** As to the first evidentiary element of section 1154(b), the Court must determine the meaning of the term "satisfactory lay or other evidence". "Satisfactory evidence" has been interpreted in different contexts to mean everything from evidence which convinces "beyond a reasonable doubt" or "to a reasonable certainty" (*see, e.g., Shriver v. Union Stockyards Nat'l Bank,* 117 Kan. 638, 232 P. 1062, 1066 (1925); *Constantin v. McNeely,* 141 So.2d 684, 688 (La.Ct.App.1962); *Cole v. McClure,* 88 Ohio St. 1, 102 N.E. 264, 266 (1913)), to "prima facie evidence" (*State v. Intoxicating Liquors,* 58 Vt. 594, 4 A. 229, 230 (1886)). The Supreme Court has stated that association on the job is not "satisfactory evidence" of violation of a parole restriction forbidding association with other ex-convicts. *Arciniega v. Freeman,* 404 U.S. 4, 4, 92 S.Ct. 22, 22, 30 L.Ed.2d 126 (1971). The U.S. Court of Customs and Patent Appeals has defined "satisfactory evidence", as used in section 489 of the Tariff Act of 1930, to mean "[p]roof of the circumstances and conditions, and a full and candid explanation thereof". *B.K. Elliott Co. v. United States,* 44 C.C.P.A. 189, 192, 1957 WL 8266 (1957) (quoting *Linen Thread Co. v. United States,* 13 Ct.Cust. 301 (1925)). In an insurance-contract suit, "satisfactory" evidence of the insured's disability was held to be that which "might reasonably inform the company of its insured's disability". *Aetna Life Ins. Co. v. Moyer,* 113 F.2d 974 (3d Cir.1940).

Black's Law Dictionary defines "satisfactory evidence" as "[s]uch evidence as is sufficient to produce a belief that a thing is true; credible evidence". BLACK'S LAW DICTIONARY 1342 (1990). A similar test is set forth in *Walker v. Collins,* 59 F. 70, 74 (8th Cir.1893)

(citing BOUVIER'S LAW DICTIONARY (14th ed.)), *rev'd on other grounds,* 167 U.S. 57, 17 S.Ct. 738, 42 L.Ed. 76 (1897). Webster's defines "satisfactory" as "good enough to fulfill a need, wish, requirement, etc." WEBSTER'S NEW WORLD DICTIONARY 1193 (3d ed. 1988).

■ In *Zarycki v. Brown,* 6 Vet.App. 91 (1993), the Court indicated a middle path when it seemed to equate "satisfactory" evidence, in the context of section 1154(b), 38 C.F.R. § 3.304(f), and VA's Adjudication and Procedure Manual, M21–1, with "credible" evidence. *Zarycki,* 6 Vet.App. at 100 ("[i]f the BVA determines that ... lay testimony is satisfactory, e.g., credible"); *see also West (Carleton) v. Brown,* 7 Vet.App. 70, 76 (1994). In view of the caselaw discussed above, the Court holds that "satisfactory evidence" in section 1154(b) means "credible evidence".

However, such a definition must not be applied in a way that would deprive section 1154(b) of effect—the benefit to the claimant that once the three evidentiary elements of 1154(b) are met, the claimant's lay evidence prevails unless it is rebutted by "clear and convincing evidence to the contrary". As pointed out above, clear and convincing evidence is a higher evidentiary standard than the preponderance-of-the-evidence standard imputed by the benefit-of-the-doubt rule, because the evidence must be in equipoise before the benefit of the doubt applies. *See Olson, supra.* If the Board, in making its assessment of credibility, were to weigh the rebuttal evidence under the preponderance standard, then the requirement that the rebuttal evidence must meet the higher, "clear and convincing" evidence standard would be rendered meaningless.

For example, in a case where a veteran presented a lay statement that he had received a particular wound in service, if the Board weighed the contrary evidence under the preponderance standard in analyzing *the credibility* of that lay statement, none of the rebuttal evidence would have to meet the clear-and-convincing standard. Such a process would improperly render section 1154(b) essentially inoperative.

"When 'interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will

take in connection with it the whole statute'". *Kokoszka v. Belford*, 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974) (quoting *Brown v. Duchesne*, 19 How. 183, 15 L.Ed. 595 (1857)); *see also Talley v. Derwinski*, 2 Vet.App. 282, 286 (1992) (citing *Oakley v. City of Longmont*, 890 F.2d 1128, 1132–33 (10th Cir.1989), *cert. denied*, 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990)); *Gardner v. Derwinski*, 1 Vet.App. 584, 586 (1991) (determining "a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute") (citing *Bethesda Hospital Ass'n v. Bowen*, 485 U.S. 399, 403–05, 108 S.Ct. 1255, 1258, 99 L.Ed.2d 460 (1988)). "In expounding a statute, we must ... look to the provisions of the whole law, and to its object and policy." *Philbrook v. Glodgett*, 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975) (quoting *United States v. Heirs of Boisdore*, 49 U.S. (8 How.) 113, 122, 12 L.Ed. 1009 (1849)). In order to give meaning to the requirement that the rebuttal evidence must meet the "clear and convincing" standard, the Court must limit the type of evidence that can be considered in the evaluation of credibility to that evidence which Congress must have intended be evaluated under the preponderance standard rather than the clear-and-convincing-evidence standard.

■ Credible testimony is that which is plausible or capable of being believed. *See Indiana Metal Prods. v. NLRB*, 442 F.2d 46, 52 (7th Cir.1971) (citing *Lester v. State*, 212 Tenn. 338, 370 S.W.2d 405, 408 (1963)); *see also Weliska's Case*, 125 Me. 147, 131 A. 860, 862 (1926); *Erdmann v. Erdmann*, 127 Mont. 252, 261 P.2d 367, 369 (1953) ("A credible witness is one whose statements are within reason and believable...."). The term "credibility" is generally used to refer to the assessment of oral testimony. *See, e.g., Anderson v. Bessemer City*, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985) ("only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said"); *NLRB v. Walton Manufacturing Co.*, 369 U.S. 404, 408, 82 S.Ct. 853, 855, 7 L.Ed.2d 829 (1962) (trier of fact "sees the witnesses and hears them testify, while the [NLRB] and the reviewing court look only at cold records"); *Jackson v. Veterans Admin.*, 768 F.2d 1325, 1331 (Fed.Cir.1985) (trier of fact has opportunity to observe "demeanor" of witness in determining credibility).

The credibility of a witness can be impeached by a showing of interest, bias, inconsistent statements, or, to a certain extent, bad character. *See State v. Asbury*, 187 W.Va. 87, 415 S.E.2d 891, 895 (1992); *see also Burns v. HHS*, 3 F.3d 415, 417 (Fed.Cir. 1993) (testimony was impeached by witness' "inconsistent affidavits" and "expressed recognition of the difficulties of remembering specific dates of events that happened ... long ago"); *Mings v. Department of Justice*, 813 F.2d 384, 389 (Fed.Cir.1987) (impeachment by testimony which was inconsistent with prior written statements). Although credibility is often defined as determined by the demeanor of a witness, a document may also be credible evidence. *See, e.g., Fasolino Foods v. Banca Nazionale del Lavoro*, 761 F.Supp. 1010, 1014 (S.D.N.Y.1991); *In re National Student Marketing Litigation*, 598 F.Supp. 575, 579 (D.D.C.1984).

■ In light of the general use of the term "credibility", and its purpose in preserving the value of the unique insights of the trier of fact, and considering the two, disparate standards in section 1154(b) for weighing evidence—the generally applicable requirement that there be a preponderance of the evidence against the claim as to each material element of the claim and the requirement that the Secretary deny the claim only if he finds clear and convincing evidence against the claim—the Court holds that certain restrictions apply in the determination by the BVA whether a veteran's "lay or other evidence" is "satisfactory", i.e., "credible". In the case of oral testimony, a hearing officer may properly consider the demeanor of the witness, the facial plausibility of the testimony, and the consistency of the witness' testimony with other testimony and affidavits submitted on behalf of the veteran. In determining whether documents submitted by a veteran are "satisfactory" evidence under section 1154(b), a VA adjudicator may properly consider internal consistency, facial plausibility, and consistency with other evidence submitted on behalf of the veteran.

In the instant case, the BVA determined that the evidence submitted by the veteran was not credible. The determination of credibility is a finding of fact. *See Smith (Brady) v. Derwinski,* 1 Vet.App. 235, 237–38 (1991). Findings of fact by the BVA may be overturned by the Court only when they are "clearly erroneous". 38 U.S.C. § 7261(a)(4); *see Gilbert, supra.* Accordingly, we must review under the "clearly erroneous" standard the Board's determination in the instant case that the lay evidence was not credible and, therefore, not satisfactory. The Board cited internal inconsistencies in the lay statements, the fact that the 1945 medical examination did not note any leg wound, and the statement in the veteran's 1947 affidavit that he had not received any wounds in service. Although the Board was correct in considering the veteran's 1947 affidavit and the inconsistencies in the lay statements in its determination of credibility, the Board should not have considered the 1945 medical examination as to this evidentiary element of section 1154(b). That evidence, because it was submitted by the Secretary and was not an affidavit, document, or testimony submitted on behalf of the veteran, should not have been reviewed, under the preponderance standard, to determine credibility.

Neither could the 1945 medical examination have been properly reviewed under the preponderance standard as to the second evidentiary element of section 1154(b), which provides that evidence must be "consistent with the circumstances, conditions, or hardships of [combat] service". To allow such a medical report to be used to establish the second evidentiary element would violate the third evidentiary element, which provides that the veteran's "lay or other evidence" can prevail "notwithstanding the fact that there is no official record" of service incurrence. The 1945 medical record did not affirmatively establish that the veteran had no residuals of a shrapnel wound, but merely stated "OK" as to "musculo-skeleton defects". R. at 18. A notation of "OK" could be consistent with the veteran's having residuals of a wound but being functional (i.e., ambulatory) at the time of the examination. As the legislative history of section 1154(b) states, the purpose of the statute is "to overcome the adverse effect of the lack of official record of incurrence or aggravation of a disease or injury and treatment thereof". H.R.Rep. No. 1157, 77th Cong., 1st Sess. (1941), *reprinted in* 1941 U.S.C.C.A.N. 1035. Therefore, a medical record should generally be weighed under the clear-and-convincing-evidence standard, after the adjudication evidentiary requirements have been relaxed, rather than under the preponderance standard in the application of the second evidentiary element. If a contemporaneous medical record had affirmatively indicated that combat "circumstances, conditions, or hardships" did not exist (for example, by suggesting that a veteran had been hospitalized at a time he asserted he was in battle), such a medical report could be used to show that the second evidentiary element (consistency with the circumstances, conditions, or hardships of combat service) had not been met.

On the facts of the current case, the Court holds that the BVA was not clearly erroneous in finding by a preponderance of the evidence that the new lay and medical evidence (submitted more than 40 years after the alleged event) was not credible, and thus not "satisfactory", in light of its contradiction by the veteran's 1947 affidavit. The 1947 affidavit was a comparatively contemporaneous statement by the veteran himself and one that is fundamentally at odds with his statements beginning 23 years later, in 1970. Here, the veteran's own statement indicating that he did not incur a leg wound in service contradicts the gravamen of the newly submitted evidence. Because the 1947 affidavit and the internal inconsistencies in the lay evidence were enough by themselves to sustain the Board's conclusion that the evidence was not satisfactory, the Board's consideration of the 1945 medical examination report on the credibility question was not prejudicial error. *See* 38 U.S.C. § 7261(b); *Yabut* and *Godwin,* both *supra.* Having found that the new evidence was "clearly" not credible, the Board quite properly never reached whether that evidence was rebutted by "clear and convincing evidence to the contrary" (adjudication rule (b) in section 1154(b)).

***d. Duty to assist:*** Where a well-grounded claim is submitted, the Secretary has a duty to assist. *See Littke, supra.*

The Board stated that Dr. Abena's October 1989 affidavit referred to old clinical records and personal notes but that copies of those records and notes "were not submitted". R. at 8. There is no indication in the record that the RO ever sought to obtain Dr. Abena's records and notes. Although the RO should have sought those records and notes, the failure to do so here was not prejudicial to the veteran (*see* 38 U.S.C. § 7261(b); *Yabut* and *Godwin,* both *supra* ), because the earliest asserted date of treatment by Dr. Abena was August 20, 1946. Any record of treatment of a leg wound on August 20, 1946, could not be dispositive on the issue of service connection under the facts of this case, because as of August 1946 the veteran's creditable service had been concluded nine months earlier. Also, complete fulfillment of the duty to assist might have required that VA provide a contemporaneous examination. *See Suttmann, supra.* However, it seems the remotest possibility that such an examination could reveal more than the presence of current residuals of a leg wound, and not that that wound occurred between November 1944 and November 1945, 50 years ago. Hence, any failure in the Secretary's duty to assist in that regard also was not prejudicial to the veteran.

As to the question of the Board's compliance with the reasons-or-bases requirement of 38 U.S.C. § 7104(d)(1), which subsumes the section 1154(b) adjudication requirement to provide full reasons for its decision, the Board found that " 'satisfactory' lay or other evidence of service incurrence has not been presented" because the other evidence "clearly rebuts" the veteran's claim that he sustained a leg wound in service. In finding the veteran's new evidence not credible, the Board did not refer specifically, as it should have, to section 1154(b)'s requirement of resolving every "reasonable doubt" in favor of the veteran when the evidence was in equipoise; however, the decision did state that the new evidence was "clearly" not credible. The Court holds that such a statement was the equivalent of the Board's stating that the preponderance of the evidence was against the credibility of the lay testimony submitted on behalf of the veteran, and thus satisfied the requirement to provide an adequate statement of reasons or bases. "Although

the BVA decision is not a model of draftsmanship, we find that it contains a plausible basis for the BVA's factual determination[s] in this case". *Hillyard v. Derwinski,* 1 Vet. App. 349, 352 (1991); *see also Smith (Clifford) v. Brown,* 5 Vet.App. 300, 302 (1993); *Stegman v. Derwinski,* 3 Vet.App. 228, 230 (1992).

### III. Conclusion

Upon consideration of the record and the briefs of the parties, the Court holds that the appellant has not demonstrated that the BVA committed error—in its findings of fact, conclusions of law, procedural processes, articulation of reasons or bases, or application of the benefit-of-the-doubt rule—that would warrant remand or reversal under 38 U.S.C. §§ 1154(b), 7252, 5107(a), (b), 5108, 7104(d)(1), 7105(c), and 7261, and the analysis in *Gilbert, supra.* The Court affirms the February 25, 1993, BVA decision.

AFFIRMED.