Citation Nr: 1533657 
Decision Date: 08/06/15 Archive Date: 08/20/15

DOCKET NO. 07-32 311 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Los Angeles, California


THE ISSUE

Entitlement to service connection for an acquired psychiatric disorder to include major depressive disorder and posttraumatic stress disorder (PTSD).


ATTORNEY FOR THE BOARD

P. Lopez, Associate Counsel


INTRODUCTION

The Veteran served on active duty from March 1978 to February 1981.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a May 2006 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Los Angeles, California. The Board previously considered this issue in April 2011, September 2013, and September 2014.

In October 2012, the Veteran revoked the power of attorney in which he had appointed a Veterans Service Organization (VSO). In March 2013, the VSO asked the Board to accept the Veteran's wishes of the revocation. Thus, the Board finds that the Veteran is now self-represented.

The claims file is now entirely contained in VA's secure electronic processing systems, Virtual VA and Veterans Benefits Management System (VBMS). 


FINDINGS OF FACT

The weight of the evidence is against a finding that the Veteran's currently diagnosed mental health disability is related to his military service.


CONCLUSION OF LAW

The criteria for service connection for the current acquired psychiatric disorder have been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304, 4.125 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. VA's Duties to Notify and Assist

The Veteran was provided full notice with regard to his claim in December 2005 and March 2006, prior to the initial adjudication. See 38 U.S.C.A. § 5103; 38 C.F.R. § 3.159(a). Further, all identified, available medical records have been obtained. These include the Veteran's records from the Social Security Administration, obtained pursuant to the September 2014 Board remand.

The Veteran underwent a VA psychiatric examination in June 2011, during which it was determined that the Veteran did not have a psychiatric disorder, to include PTSD. See also August 2011 VA opinion. Following review of the claims file, the examiner confirmed his previous findings in a February 2012 addendum opinion.

In its September 2013 remand, the Board noted that, although the VA examiner determined there is no current disability, the record nevertheless contains diagnoses of psychiatric disorders during the pendency of the claim. See McClain v. Nicholson, 21 Vet. App. 319, 321 (2007) (holding that the current disability element of a service connection claim is satisfied when a claimant has a disability at the time a claim is filed or during the pendency of the claim). Accordingly, the Board remanded the matter in order to obtain a medical opinion to determine if any psychiatric disorder identified during the pendency of the claim resolved and, if so, whether the disorder is related to the Veteran's active service.

In compliance with the remand instructions, a VA medical opinion was obtained in October 2013. The examiner reviewed the claims file and noted that "[t]here is a comprehensive psychiatric evaluation from that time indicating major depressive disorder, single episode, moderate with psychotic features..." He continued, "[b]ased on this review, it is at least as likely as not that the Veteran was experiencing psychological symptoms at that time." In a subsequent March 2014 VA medical opinion, the same examiner noted that, at the time of his prior (June 2011) examination, "I was not finding evidence of major depressive disorder. This indicates that it is as least as likely as not that his mood disorder had either resolved or was in remission at the time of my examination."

The claims file was again returned to the same VA examiner in June 2014 at which time he indicated, "I have no opinion as whether the diagnosis of major depressive disorder made in 2005 is related to [the Veteran's] service." The examiner subsequently indicated that he had reviewed the claims file prior to rendering this opinion. See the VA addendum opinion dated August 2014.

Critically, despite numerous attempts at clarification, the VA examiner failed to render an opinion as to whether it is at least as likely as not that the major depressive disorder diagnosed in May 2005 was due to the Veteran's military service. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007) (holding that when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate). 

In its September 2014 remand, the Board instructed the AOJ to obtain a VA medical opinion from a VA medical professional other than the examiner who provided the prior opinions. The new examiner was asked to render an opinion as to whether the Veteran's diagnosed mental health disability was related to service. Such opinion was provided in May 2015. The examiner provided a medical opinion with consideration of all pertinent evidence. She reviewed the claims file, including the Veteran's treatment records during and after service. The Board finds the examiner's opinion to be adequate and there is no argument to the contrary.

VA has satisfied its duties to inform and assist with respect to this claim. The AOJ fully complied with the remand directives, and no further remand is needed. There is no additional notice or assistance that would be reasonably likely to aid in substantiating the claim, and there will be no prejudice by a decision.

II. Analysis

Service connection will be granted for a disability, even if it was first diagnosed after service, where the evidence shows that the current disability was incurred in or aggravated by incident, disease, or injury in service. 38 U.S.C.A. § 1110; 38 C.F.R. §§ 3.303; see also Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

To establish service connection for PTSD, there must generally be: (1) medical evidence establishing a current diagnosis in conformance with the DSM-IV, per 38 C.F.R. § 4.125; (2) credible supporting evidence that the in-service stressor(s) occurred; and (3) a medical link between the current disability and such stressor(s). 38 C.F.R. § 3.304(f); see also Cohen v. Brown, 10 Vet. App. 128, 138-40 (1997).

When there is an approximate balance of positive and negative evidence regarding any material issue, or the evidence is in relative equipoise, all reasonable doubt will be resolved in favor of the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102.

The Veteran asserts entitlement to service connection for an acquired psychiatric disorder, to include depression and PTSD. His claim was received in July 2005. 

The earliest VA treatment records are dated in January 1997. These show treatment for alcohol and cannabis abuse. Subsequent treatment records show a diagnosis of major depressive disorder, single episode, moderate with psychotic features, in May 2005, October 2005, and March 2006; and a diagnosis of adjustment disorder with depressed and anxious mood, in April 2006. The April 2006 provider stated that although the Veteran had symptoms that may be suggestive of PTSD, this diagnosis would need further confirmation over time. Additionally, VA treatment records from January 2005 and August 2005 show a diagnosis of "likely PTSD." See also VA treatment records from May 2006. More recent records show diagnoses of PTSD by history in February 2013 and October 2013; and diagnoses of alcohol and cannabis dependence in May and July 2007, July 2008, and June 2013.

Although the medical evidence shows that the Veteran has suffered from an acquired psychiatric disorder during the appeal period, the most probative evidence shows that there is no diagnosis of PTSD in conformance with the DSM-IV criteria, as required for service connection. In this regard, the Board notes that while VA treatment records show diagnoses of PTSD, these diagnosed are provisional or inconclusive. See also April 2009 appellate brief (noting that the April 2006 provider gave a "provisional diagnosis" of PTSD). Moreover, the June 2011 VA examiner opined that the psychiatric symptoms documented in the Veteran's treatment records were depressive in nature. See February 2012 VA addendum opinion. Accordingly, the most probative evidence shows that there is no current diagnosis of PTSD in conformance with the DSM-IV. Rather, the evidence shows a diagnosis of major depressive disorder, along with a history of substance abuse.

In light of the absence of a valid diagnosis, service connection for PTSD is not warranted at this time. See 38 C.F.R. §§ 3.304(f), 4.125. The Board, nonetheless, will consider service connection for the Veteran's diagnosed depression. Clemons v. Shinseki, 23 Vet. App. 1 (2009).

The Veteran contends that his mental health disability is due to in-service events while stationed aboard the aircraft carrier USS Ranger (CV-61) from 1978 to 1981. In a July 2005 statement, he specifically cited two events. First, he stated that as operator of the casualties elevator, he saw a sailor that moments earlier got sucked into a jet engine; he described the sailor as bloody and in pain, and stated that the sailor later died in the Subic Bay Naval Base, in the Philippines. Second, he mentioned a 1979 shipwreck, which produced a large hole in the front of the ship. The Veteran has clarified that the shipwreck was a tanker collision, but at the time he thought that it might have been a mine. See April 2011 statement; see also March 2011 appellate brief (summarizing evidence regarding claimed stressors). 

In a May 2011 statement, the Veteran noted that he began having disciplinary problems after the ship collision. Although he admits thinking that these issues were due to alcohol consumption, he stated that he was sober every time that he got into trouble. The first incident that he alluded to was a fight with a fellow officer because the Veteran did not like the way in which the officer gave him an order. The Veteran stated that this was the beginning of the end of his military career. 

He further stated that his rude behavior and mental problems continued after service. He specifically mentioned an incident wherein he "walked into a car" (i.e. was struck by the car). See May 2011 statement. He attributed this incident to "walking in a deep thought," even though the report of the highway department noted that he was drunk at the time. He also alluded to a 2004 incident wherein he flipped his car and hurt three people. In March 2010, the Veteran reported that his driver's license had been suspended due to a DUI. See March 2010 VA treatment records.

The Veteran is competent to report an in-service injury that is factual in nature, as well as his observable symptoms and history, including any diagnosis or treatment received, and such reports must be considered. Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). Nevertheless, he is generally not competent to diagnose a specific condition or to offer an opinion as to the etiology of his current disability, as these questions require medical expertise and testing. Id. 

The Veteran served aboard the USS Ranger from September 1978 to October 1979, and January 1980 to November 1980. See military personnel records received in November 2002. He submitted an internet article which purports to document the service history of the USS Ranger. See web document dated August 2007. He highlighted a portion of the article which showed a "South China Sea Collision" on February 1979, and "hostage help" in the Arabian Sea on September 1980. See also April 2009 appellate brief. In view of the above, the Board concedes that the Veteran experienced a ship collision aboard the USS Ranger.

Service treatment records show that the Veteran was referred for a psychological evaluation in August 1979. He reported that he felt that he had a drinking problem and was given a diagnosis of habitual excessive drinking with psychological addiction. The examiner noted no thought disorder, neurosis, or psychosis. Subsequently, from October to December 1979, the Veteran went through alcohol rehabilitation treatment. He was sent by his command because of alcohol-related incidents. He reported a history of drinking heavily for the past several years and having had blackouts, shakes, nervousness, and insomnia, all directly related to his alcohol abuse. Regarding his mental status, there was no evidence of psychosis, disabling neurosis, or organic brain syndrome. The final diagnosis was chronic alcoholism under control. 

A March 1980 treatment record shows that the Veteran suffered a relapse shortly after the rehabilitation process. He was given a diagnosis of early alcoholism with psychological dependence and personality disorder. A June 1980 consultation report shows that the Veteran was seen on an emergency basis because of poor work performance and some paranoid ideation relative to people putting something in his coffee. He attributed his poor work performance to a lack of motivation and frequents thoughts about his financial difficulties. The examiner found no evidence of psychosis, neurosis, or organic brain syndrome. An August 1980 treatment record shows a diagnosis of chronic alcoholism and immature/inadequate personality. 

A February 1981 treatment record shows that the he was referred to clinic because he was bizarre, demanding, and belligerent. He had been in a fight the previous day while drinking heavily. He denied any psychiatric symptomatology. A mental status examination revealed no organic or functional thought process disorder. He was described as oppositional, vague, somewhat grandiose, and attention seeking. The psychiatric diagnosis was chronic alcoholism by history. Last, an August 1980 administrative record (within service treatment records) shows that the Veteran was recommended for discharge due to misconduct and immature personality compounded by chronic alcoholism.

In May 2015, a VA examiner issued an opinion as to whether the Veteran's diagnosed mental health disability is related to his military service. The examiner opined that his major depressive disorder is less likely than not related to service, to include the bow collision and operations aboard the USS Ranger. Rather, the examiner opined that the Veteran's primary mental health diagnosis was his polysubstance use disorder, which presented in service, was diagnosed again some 17 years after service, and has recurred with multiple relapses and untoward related consequences, such as a felony DUI with time served. The examiner ultimately concluded that the Veteran's depressive and PTSD symptoms were likely related to his continued ongoing polysubstance abuse, multiple situational stressors (i.e. financial and employment-related) and his history of motor vehicle accidents, to include a felony DUI. The examiner also noted that his first presentation to a VA treatment facility was for alcohol dependence in 1997, many years after service.

The opinion of the May 2015 VA examiner is consistent with that of the June 2011 VA examiner. While the earlier examiner did not address the specific question of whether the diagnosed depression was related to service, he did provide an opinion with regard to the claimed PTSD. The June 2011 examiner concluded that the Veteran did not present symptoms of PTSD. Nevertheless, he opined that the claimed stressors were not of the types associated with PTSD. As such, it was exceedingly unlikely that the claimed stressors resulted in posttraumatic stress disorder or any other psychiatric disturbance. Assuming that the Veteran did have symptoms of PTSD or any other psychiatric disturbance, the examiner opined that it was more likely that these were caused by the two motor vehicle accidents reported by the Veteran: the one in which he was struck by a car, and the one in which he flipped his car. See also August 2011 and February 2012 VA addendum opinions.

The Board also notes that the Veteran submitted statements from two long-time friends who knew him while he was on active duty. The individuals reported that the Veteran would talk about hardships noted on a Western Pacific (WestPact) deployment of the USS Ranger, and that they noticed an emotional mood change when he returned from that service. These statements help to establish the occurrence of traumatic events in service; again, this is conceded by the Board. However, the description of the Veteran's mood changes following service does not help establish service connection here. Indeed, the competent medical evidence demonstrates treatment for alcohol abuse in service, which could itself lead to mood changes. Therefore, the lay observations in this regard do not help establish continuity of a currently diagnosed psychiatric disorder, as these individuals would lack the expertise to distinguish between behavior changes brought on by alcohol abuse versus those attributable to an acquired psychiatric disorder.

The May 2015 opinion was provided following a review of the claims file, to include treatment records and the June 2011 VA examination. Further, it included a clear rationale. For these reasons, it is deemed highly probative. Moreover, no other competent evidence of record refutes that opinion. As stated above, the Veteran is not competent to establish such connection. Indeed, the question of causation here is a complex medical issue, requiring medical expertise, as opposed to an immediately observable cause-and effect relationship such as a fall leading to a broken leg. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). 

Finally, the Board notes that, in an October 2006 statement, the Veteran asserted that a provider at the Long Beach VA facility stated that his psychiatric symptoms were connected to service. The Board has reviewed the medical evidence and found no evidence to support the Veteran's assertion. While the Veteran is competent to report any statement told to him by his provider, the Board finds that, in this regard, the medical treatment records are more probative and credible than the Veteran's reports during the course of the current claim process. See Caluza v. Brown, 7 Vet. App. 498, 511 (1995) (stating that a witness's credibility may be impeached by a showing of interest, bias, or inconsistent statements).
 
In sum, the weight of the evidence is against a finding that the Veteran's currently diagnosed major depressive disorder is related to service. The benefit-of-the-doubt-doctrine is currently inapplicable, and the claim must be denied 38 C.F.R. § 3.303.


ORDER

Service connection for an acquired psychiatric disorder is denied.



____________________________________________
Eric S. Leboff 
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs