Citation Nr: 1554528 
Decision Date: 12/31/15 Archive Date: 01/07/16

DOCKET NO. 10-37 645 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Denver, Colorado


THE ISSUE

Entitlement to service connection for a left shoulder disorder, to include as secondary to service-connected residuals, gunshot wound, left chest, with lung obstruction and retained foreign bodies.


REPRESENTATION

Appellant represented by: Colorado Division of Veterans Affairs


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

Robert J. Burriesci, Counsel


INTRODUCTION

The Veteran served on active duty from October 1974 to October 1977.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a July 2010 rating decision by a Regional Office (RO) of the Department of Veterans Affairs (VA). 

The Veteran presented testimony at a hearing before the undersigned in June 2014. A transcript of the hearing is associated with his claims folder.

In July 2014, the Board denied a claim of clear and unmistakable error in a February 1979 rating decision for failing to assign separate compensable ratings for muscle injuries to the left shoulder girdle as a residual of an in-service gunshot wound to the left chest. At the same time, the Board remanded the current issue of service connection for a left shoulder disorder to the RO for further development. In May 2015 the Board remanded the issue for additional development.


FINDING OF FACT

A left shoulder disorder was not manifest during service, did not manifest within one year of separation from service, is not attributable to service, and is not caused by or aggravated by the service-connected residuals, gunshot wound, left chest, with lung obstruction and retained foreign bodies.


CONCLUSION OF LAW

The criteria for entitlement to service connection for left shoulder disorder have not been met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1131 (West 2014); 38 C.F.R. §§ 3.303, 3.304, 3.307, 3.309, 3.310 (2015).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a). See also Pelegrini v. Principi, 18 Vet. App. 112 (2004); Quartuccio v. Principi, 16 Vet. App. 183 (2002); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Dingess v. Nicholson, 19 Vet. App. 473 (2006). 

Review of the claims file indicates that the Veteran was provided with notice in February 2010; however, a copy of this notice letter is not associate with the claims file. In any event, the Veteran's statements at the hearing before the undersigned demonstrate that he had actual knowledge of what evidence is required to establish service connection. Furthermore, the Board concludes that a reasonable person in the Veteran's position would have known from the information he received what he was required to submit in order to substantiate his service connection claim. See Mlechick v. Mansfield, 503 F.3d 1340, 1345 (Fed.Cir.2007) (noting that defects in notice are not prejudicial where the claimant had actual knowledge or a reasonable person could be expected to understand from the information provided).

The duty to assist has also been met and appellate review may proceed without prejudice to the appellant. See Bernard v. Brown, 4 Vet. App. 384 (1993). All available, relevant, and adequately identified treatment records, for which necessary authorization for VA to obtain, have been associated with the claims file. The Veteran was afforded relevant VA medical examinations. The Veteran was afforded a hearing before the undersigned and the transcript of the hearing is of record.

Neither the appellant nor his representative have identified, and the record does not otherwise indicate, any additional existing evidence that is necessary for a fair adjudication of the claim that has not been obtained. Hence, no further notice or assistance to the appellant is required to fulfill VA's duty to assist the appellant in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002).

II. Service Connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. § 1110; 38 C.F.R. 3.303(a). Establishing service connection generally requires medical evidence or, in certain circumstances, lay evidence of the following: (1) A current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) nexus between the claimed in-service disease and the present disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Hickson v. West, 12 Vet. App. 247 (1999); Caluza v. Brown, 7 Vet. App. 498 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996) (table). In addition, certain chronic diseases, such as arthritis, may be presumed to have been incurred or aggravated during service if they become disabling to a compensable degree within one year of separation from active duty. 38 U.S.C.A. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309; Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

Service connection may also be granted on a secondary basis for a disability if it is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310(a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) proximately caused by or (b) proximately aggravated by a service-connected disability. Allen v. Brown, 7 Vet. App. 439, 448 (1995).

In making all determinations, the Board must fully consider the lay assertions of record. A layperson is competent to report on the onset and continuity of his current symptomatology. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a Veteran is competent to report on that of which he or she has personal knowledge). Lay evidence can also be competent and sufficient evidence of a diagnosis or to establish etiology if (1) the layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Davidson, 581 F.3d at 1316; Jandreau, 492 F.3d at 1376-77. When considering whether lay evidence is competent the Board must determine, on a case by case basis, whether the Veteran's particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011). 

The Board is charged with the duty to assess the credibility and weight given to evidence. Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997), cert. denied, 523 U.S. 1046 (1998); Wensch v. Principi, 15 Vet. App. 362, 367 (2001). As a finder of fact, when considering whether lay evidence is satisfactory, the Board may also properly consider internal inconsistency of the statements, facial plausibility, consistency with other evidence submitted on behalf of the Veteran, and the Veteran's demeanor when testifying at a hearing. See Dalton v. Nicholson, 21 Vet. App. 23, 38 (2007); Caluza v. Brown, 7 Vet. App. 498, 511 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996).

The Veteran seeks entitlement to service connection for a left shoulder disorder, to include as secondary to service-connected residuals, gunshot wound, left chest, with lung obstruction and retained foreign bodies.

Upon examination at separation from service in October 1977 the Veteran was not noted to have any musculoskeletal disabilities or any problems with the upper extremities. The Veteran reported that he was in good health. On the Report of Medical History, dated in October 1977 the Veteran indicated that he did not know if he had a bone, joint or other deformity. However, he did indicate that he did not have arthritis.

The Veteran was afforded a VA medical examination in January 1979. He reported that his left shoulder begins to hurt halfway through his day at work. Physical examination of the Veteran's musculoskeletal system was within normal limits. 

In November 1979 the Veteran reported shoulder joint pain. 

In a statement dated in December 1979 a private provider reported that the Veteran complained of left arm and shoulder pain since he was shot in 1976. After examination the impression was most likely secondary to myalgia. The provider noted that there might be some recurrent bursitis and that it may be worthwhile to check him out for the possibility of thoracic outlet syndrome with electrical studies. 

In August 1982 the Veteran reported that his arm and shoulder had become weaker since the accident. 

The Veteran was afforded a VA medical examination in November 1982. He reported left shoulder pain. He stated that after four or five days of work, which involves mopping the floors and general physical duties of a moderate nature, he will develop left shoulder pain that prevents him from working further. Physical examination revealed no shoulder tenderness, deformity, or limitation of motion.

In a November 2005 private treatment record the Veteran was noted to have no arthritic complaints.

The Veteran was afforded a VA medical examination in March 2010. The Veteran's claims file was noted to not be available. The examiner noted that the Veteran had a history of a gunshot wound to the left chest wall and that the wound was through and through. The Veteran was treated and was noted to have no problems post hospitalization except back pain. After examination, the examiner assessed the Veteran with degenerative SLAP lesion of the shoulder joint noted on magnetic resonance imaging (MRI) scan. The examiner stated that this was not related to his prior gunshot wound to the left chest area and that the Veteran retained full range of motion of the shoulder at the time of the exam.

In July 2010 the examiner provided an addendum regarding the rationale for the March 2010 opinion. The examiner stated that the disability was not related because a gunshot wound to the chest will not result in a SLAP lesion of the shoulder. SLAP lesion is an overuse or degenerative lesion of the shoulder. The gunshot was to the chest, not the shoulder.

A VA medical opinion was obtained in November 2014. After review of the claims file the examiner rendered the opinion that the claimed condition was less likely than not incurred in or caused by the claimed in-service injury, event or illness. After recounting prior examination and treatment results the examiner explained that the current left shoulder conditions (torn labrum and degenerative changes) presented 30 years after the gunshot wound in service. These are degenerative findings and not related to an injury. The gunshot wound was to the chest and not the shoulder. Muscle injuries related to the gunshot wound to the chest resolved without any disability. For these reasons the examiner found that the current left shoulder injury was not related to the injury in service. The service treatment records do not show that a left shoulder condition existed prior to the left chest gunshot wound. Therefore, the left chest gunshot wound could not have aggravated the left shoulder condition. 

In June 2015 a private massage therapist reported that scar tissue covers a large area of the left side of the Veteran's back. The scar tissue was described as very fibrous and tough. The therapist indicated that the scar tissue may also be contributing to the decreased muscle function and discomfort.

The Veteran was afforded a VA medical examination in September 2015. The Veteran was noted to be diagnosed with left shoulder impingement syndrome, labral tear (including SLAP), and acromioclavicular joint osteoarthritis. The Veteran was reported to have been shot in the chest in service. The Veteran was noted to deny any injuries to his left shoulder while he was in service. After physical examination of the left shoulder the examiner rendered the opinion that it was less likely than not that the disability was incurred in or caused by the claimed in-service injury, event, or illness. The examiner noted that the Veteran's medical records, including Social Security Records and Poudre Valley Hospital, make reference to a history of gunshot wound to the chest, yet some of the same records also state that there is no history of trauma. The records do not discuss the issue of left shoulder pain. The examiner noted that most of the records were related to heart disease and the focus of the encounters was not related to the left shoulder concerns. The examiner noted that the Veteran reported punching in boxing exercises as part of his cardiac rehabilitation. The first MRI that showed labral pathology in his left shoulder was done in November 2009. The January 1979 VA examination was reported to show that he had soreness in his shoulder and chest when lifting anything. The Veteran reported that his left shoulder began to hurt halfway through the day when lifting boxes. The November 1982 examination showed that he stated that he had been fired from his prior two jobs due to inability to perform his duties due to left shoulder pain. The examiner reported that based upon these reports, it was clear that the Veteran had complaints of left shoulder pain in 1979 and 1982. However, the examiner noted that the reports do not express any correlation between the gunshot wound and the left shoulder complaints. 

With regard to whether the gunshot wound caused the degenerative changes in the left glenoid labrum, the examiner noted that the gunshot wound involved the left chest but not the left shoulder. Discussing the trajectory of the wound the examiner found that it only involved the chest cavity. 

The examiner continued to note that although the examinations in January 1979 and November 1982 show complaints of left shoulder pain, the service treatment records do not show any documentation of a left shoulder condition while in service. The separation physical in October 1977 did not indicate any sequelae of the gunshot wound and there was no documentation of a left shoulder condition. 

The clinical records show that he was evaluated in September 2009 and that a left shoulder concern was addressed. An MRI was ordered and was the first imaging study to show degenerative labral tear.

The examiner noted that civilian medical records show that he had reported a previous gunshot wound to providers, but there was no documentation that a left shoulder condition was associated with the left chest gunshot wound. 

The examiner indicated that the labral tear in this case was a degenerative tear, a condition that develops as a result of overuse. It is not the result of acute injury. The gunshot wound involved the left chest and not the left shoulder. The gunshot wound or its residuals have not caused the degenerative changes in the left shoulder.

With regard to whether the Veteran's left chest gunshot wound aggravated the Veteran's left shoulder disability, the examiner continued to note that the Veteran had a gunshot wound to the left chest in November 1976. The records showed that he separated from service in October 1977. The separation physical exam showed that he had a history of a left chest gunshot wound with no sequelae. He was diagnosed with a left shoulder degenerative labral tears in 2009 more than 30 years after the gunshot wound. The gunshot wound could not aggravate a left shoulder condition that had not been diagnosed at the time of the gunshot wound. The records show that there were no sequelae to the gunshot wound, so there would be no residuals to aggravate a left shoulder condition. The left chest gunshot wound involved the chest only and the trajectory of the bullet was away from the left shoulder. This gunshot wound did not involve the left shoulder. 

In September 2015 the Veteran disagreed with the reported participation in punching and boxing. Further he argued that he suffered from left shoulder issue since service. 

Entitlement to service connection for a left shoulder disorder is not warranted. Service treatment records do not reveal any diagnosis or treatment for any left shoulder disability and the Veteran was not found to have any left shoulder disability upon examination at separation from service. The Veteran did complain of left shoulder pain on examination in January 1979 and August 1982. However, he was not diagnosed with any shoulder disability. A private provider in December 1979 noted that the Veteran complained of left shoulder pain since he was shot in 1976. The provider associated the pain with myalgia. It was noted that there might be some recurrent bursitis and that it may be worthwhile to check him out for the possibility of thoracic outlet syndrome. However, the provider did not render an opinion associating the Veteran's pain with his injury in service. Examination in November 1982 did not reveal any shoulder disorder. VA examiners have rendered the opinion that the Veteran's left shoulder disability is not related to or aggravated by his active service, including his gunshot wound in service. The rationale provided include that the disability is due to overuse, that the gunshot wound did not involve the shoulder, the Veteran did not have a shoulder disability at separation from service, and the disability did not manifest for many years after service. The Veteran indicates that he never participated in punching or boxing exercise as reported by a VA medical examiner. However, this does not diminish the opinion of the examiner because the examiner based the opinion on the nature of the disability, the location of the gunshot wound, the lack of injury to the shoulder in service, and the lack of any diagnosed disability for many years after separation from service. The Veteran's reports of shoulder pain since service are acknowledged; however, these contradict the Veteran's report at separation from service that he was in good health and his lack of report of shoulder pain. Thus, the opinions of the VA medical examiners are more probative. Lastly, the Veteran was not diagnosed with any left shoulder orthopedic disability until more than a year after separation from service. As the preponderance of the evidence is against a finding that the Veteran has a left shoulder disability due to or aggravated by service or related to his gunshot wound of the left chest in service, service connection is denied.


ORDER

Service connection for a left shoulder disorder, to include as secondary to service-connected residuals, gunshot wound, left chest, with lung obstruction and retained foreign bodies, is denied.



____________________________________________
MICHAEL MARTIN
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs