Citation Nr: 1710352 
Decision Date: 03/31/17 Archive Date: 04/11/17

DOCKET NO. 11-05 013 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUES

1. Entitlement to service connection for a left knee disorder, claimed as secondary to service-connected disabilities.

2. Entitlement to service connection for a left foot disorder, claimed as secondary to service-connected disabilities.


REPRESENTATION

Veteran represented by: Texas Veterans Commission


ATTORNEY FOR THE BOARD

D. Jimerfield, Associate Counsel



INTRODUCTION

The Veteran served on active duty for training (ACDUTRA) from January 1973 to July 1973.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a December 2009 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas.

In May 2014 and May 2015, the Board remanded the issues of entitlement to service connection for left knee and left foot disorders for further development.

In November 2015, the Board denied the Veteran's claim for service connection for a left foot disorder and remanded the claim for service connection for a left knee disorder for additional development. The Veteran appealed the Board's denial of service connection for a left foot disorder to the United States Court of Appeals for Veterans Claims (Court) which, in July 2016, on the basis of a Joint Motion for Remand (Joint Motion), vacated the denial and remanded the matter to the Board for further action. In the meantime, the issue of entitlement to service connection for a left knee disorder was recertified to the Board.

Subsequently, the Board remanded both claims in September 2016. As will be discussed herein, the Board finds that the Agency of Original Jurisdiction (AOJ) has substantially complied with the remand orders in regard to the Veteran's claim for service connection for a left knee disorder and no further action is necessary in regard to this claim. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998), where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (2002). However, as additional development is required with regard to the Veteran's claim for service connection for a left foot disorder, such matter is again remanded. 

As observed in the September 2016 decision, in a May 2016 rating decision, the RO granted service connection for low back pain with spasms with an initial 20 percent rating and right lower extremity radiculopathy with an initial 10 percent rating, effective February 10, 2009. Thereafter, the Veteran entered a notice of disagreement as to the assigned disability rating and effective date for the award of service connection for both disabilities later in May 2016. Additionally, in a July 2016 rating decision, the RO determined that new and material evidence had not been received in order to reopen a previously denied claim of entitlement to service connection for posttraumatic stress disorder. Thereafter, the Veteran entered a notice of disagreement as to such denial later in July 2016. Although a statement of the case has not yet been issued as to the foregoing issues, according to the Veterans Appeals Control and Locator System, the claims are still being developed by the AOJ. As a result, the Board declines jurisdiction over such issues until such time as an appeal to the Board is perfected.

As a final preliminary matter, the Board notes that,, following the most recent adjudication of his claims in the December 2016 supplemental statement of the case, the Veteran submitted additional evidence in February 2017; however, in December 2016, he, through his representative, waived AOJ consideration of any additionally submitted evidence. 38 C.F.R. § 20.1304(c) (2016). Therefore, the Board may properly consider such newly received evidence.

This appeal was processed using the Veterans Benefits Management System (VBMS) and Virtual VA paperless claims processing systems.

The issue of entitlement to service connection for a left foot disorder is addressed in the REMAND portion of the decision below and is REMANDED to the AOJ.


FINDING OF FACT

A left knee disorder is not shown to be causally or etiologically related to any disease, injury, or incident during ACDTURA, and is not caused or aggravated by the Veteran's service-connected disabilities.



CONCLUSION OF LAW

The criteria for service connection for a left knee disorder have not been met. 
38 U.S.C.A. §§ 101(24), 1110, 5107 (West 2014); 38 C.F.R. §§ 3.1(d), 3.6(a), 3.102, 3.303, 3.310 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Due Process Considerations

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. 
§§ 3.102, 3.156(a), 3.159, 3.326(a) (2016). 

In the instant case, VA's duty to notify was satisfied by a March 2009 letter sent prior to the issuance of the rating decision on appeal. See 38 U.S.C.A. §§ 5102, 5103, 5103A; 38 C.F.R. § 3.159; see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015); Pelegrini v. Principi, 18 Vet. App. 112 (2004); Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).

The VCAA also requires VA to make reasonable efforts to help a claimant obtain evidence necessary to substantiate his claim. 38 U.S.C.A. § 5103A; 38 C.F.R. 
§§ 3.159(c), (d). This "duty to assist" contemplates that VA will help a claimant obtain records relevant to his claim, whether or not the records are in Federal custody, and that VA will provide a medical examination or obtain an opinion when necessary to make a decision on the claim. 38 C.F.R. § 3.159(c)(4).

In the instant case, the Board finds that all relevant facts have been properly developed and that all evidence necessary for equitable resolution of the issue decided herein has been obtained. The Veteran's service treatment records (STRs), post-service VA and private treatment records, and Social Security Administration (SSA) records have been obtained and considered. He has not identified any additional, outstanding records that have not been requested or obtained. 

The Veteran was provided with VA examinations in September 2009, November 2014, and June 2015, and addendum opinions were obtained in December 2015 and November 2016. While the September 2009 VA examination did not explicitly address the Veteran's left knee, and the November 2014 VA examiner found that he did not have a left knee disorder, the Board finds that the opinions obtained in June 2015, December 2015, and November 2016 are adequate to decide the instant claim. In particular, the June 2015 VA examination was predicated on an interview with the Veteran; a review of the record, to include his STRs; and a physical examination with diagnostic testing. Furthermore, the opinions proffered by VA examiners in June 2015, December 2015, and November 2016 considered all of the pertinent evidence of record, to include the statements of the Veteran, and provided complete rationale, relying on and citing to the records reviewed. Moreover, these examiners offered clear conclusions with supporting data as well as reasoned medical explanations connecting the two. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) ("[A]medical opinion ... must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions"). Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination and opinion regarding the issue decided herein has been met.

Furthermore, the Board finds there has been substantial compliance with the Board's May 2014, May 2015, November 2015, and September 2016 remand directives with regard to the Veteran's left knee claim and no further action in this regard is necessary. See D'Aries, supra. In this regard, in May 2014, the matter was remanded in order for the AOJ to obtain relevant records and afford the Veteran a VA examination in regard to his left knee claim. Thereafter, the AOJ associated the Veteran's VA treatment records with the file in October 2014 and afforded the Veteran a VA examination in November 2014. 

In May 2015, the Board remanded the claim so as to obtain SSA records and to afford the Veteran a new VA examination so as to determine the nature and etiology of his left knee disorder. Thereafter, SSA records were obtained in June 2015 and the Veteran underwent a new VA examination that same month. The claim was remanded again in November 2015 and September 2016 in order to obtain addendum opinions, which were provided in December 2015 and November 2016, respectively. Therefore, the Board finds that there has been substantial compliance with its May 2014, May 2015, November 2015, and September 2016 remand directives in regard to the Veteran's left knee claim, and no further action in this regard is necessary. 

In light of the foregoing, the Board finds that VA's duties to notify and assist have been satisfied. Thus, appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384, 394 (1993).

II. Analysis

A Veteran is a person who served in the active military, naval, or air service and who was discharged or released under conditions other "than dishonorable." 38 C.F.R. § 3.1(d). The term "active military, naval, or air service" includes: (1) active duty; (2) any period of ACDUTRA during which the individual concerned was disabled or died from a disease or injury incurred or aggravated in the line of duty; and (3) any period of inactive duty for training (INACDUTRA) during which the individual concerned was disabled or died from an injury incurred or aggravated in the line of duty. 38 U.S.C.A. § 101(24); 38 C.F.R. § 3.6(a). 

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

Direct service connection may not be granted without evidence of a current disability; in-service incurrence or aggravation of a disease or injury; and a nexus between the claimed in-service disease or injury and the present disease or injury. Id.; see also Caluza v. Brown, 7 Vet. App. 498, 506 (1995) aff'd, 78 F.3d 604 (Fed. Cir. 1996). 

Additionally, for Veterans who have served 90 days or more of active service during a war period, or after December 31, 1946, certain chronic disabilities, to include arthritis, are presumed to have been incurred in service if manifest to a compensable degree within one year of discharge from service. 38 U.S.C.A. 
§§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309. Alternatively, when a disease at 38 C.F.R. § 3.309(a) is not shown to be chronic during service or the one year presumptive period, service connection may also be established by showing continuity of symptomatology after service. See 38 C.F.R. § 3.303(b). The use of continuity of symptoms to establish service connection is limited only to those diseases listed at 38 C.F.R. § 3.309(a), and does not apply to other disabilities which might be considered chronic from a medical standpoint. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

However, the advantages of these evidentiary presumptions do not extend to those who claim service connection based on a period of ACDUTRA or INACDUTRA. McManaway v. West, 13 Vet. App. 60, 67 (citing Paulson v. Brown, 7 Vet. App. at 469-70, for the proposition that, "if a claim relates to period of [ACDUTRA], a disability must have manifested itself during that period; otherwise, the period does not qualify as active military service and claimant does not achieve Veteran status for purposes of that claim"); Biggins v. Derwinski, 1 Vet. App. 474, 478 (1991); Smith v. Shinseki, 24 Vet. App. 40, 47 (2010). 

Service connection may also be established on a secondary basis for a disability which is proximately due to or the result of service-connected disease or injury. 
38 C.F.R. § 3.310(a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) proximately caused by or (b) proximately aggravated by a service-connected disability. Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc). Further, service connection may not be awarded on the basis of aggravation without establishing a pre-aggravation baseline level of disability and comparing it to the current level of disability. 38 C.F.R. § 3.310(b).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

As an initial matter, the Board notes that the evidence does not show, and the Veteran does not contend, that his left knee disorder is related to any aspect of his period of ACDUTRA. In this regard, his STRs are negative for any complaints, treatment, or diagnoses referable to a left knee disorder, and he has alleged that his left knee disorder is the result of falls that occurred many years after service. See Robinson v. Shinseki, 557 F.3d 1355, 1361 (2008) (claims which have no support in the record need not be considered by the Board as the Board is not obligated to considered "all possible" substantive theories of recovery. Where a fully developed record is presented to the Board with no evidentiary support for a particular theory of recovery, there is no reason for the Board to address or consider such a theory). In this regard, the Veteran contends that his left knee disorder is due to his service-connected right ankle disorder, low back pain with spasms, or right lower extremity radiculopathy. Specifically, he alleges that one or more of his service-connected disabilities caused him to fall, which in turn, caused or aggravated his current left knee disorder. See, e.g., claim (February 2009). 

At the outset, the Board finds that the competent evidence of record confirms that the Veteran has a current left knee disorder. Specifically, in conjunction with the June 2015 VA examination, he was diagnosed with a left knee strain. The Board notes the Veteran's post-service VA treatment records show he was noted to have bilateral knee arthralgia in January 2009 and degenerative joint disease of the left knee in May and June 2012. However, in December 2015, a VA examiner opined that arthralgia, which means pain, is a symptom, not a diagnosis or disability. The examiner also noted that x-rays in June 2015 show that the left knee was normal and that there was no arthritis. The examiner stated there are no prior left knee x-rays; that arthritis must be diagnosed by x-ray; and that arthritis is not likely to have resolved. Consequently, the Board finds that the only current left knee disorder present during the appeal period is a left knee strain.

Furthermore, the record reflects that the Veteran is service-connected for fracture of the right malleolus and right fibula, low back pain with spasms, and right lower extremity radiculopathy. Consequently, the remaining inquiry is whether the Veteran's service-connected disabilities caused or aggravated the Veteran's left knee strain. However, upon review of the evidence, the Board finds the preponderance of the evidence is against the claim.

In this regard, the Veteran's post-service VA treatment records reflect that, in August 2008, he reported that his right leg gave out and he fell and injured his left foot and ankle. While he was treated with complaints of a left foot fracture thereafter, none of the treatment records reflect that he reported injuring his left knee during the fall or that he experienced any resultant left knee symptomatology. Rather, the first complaints referable to the left knee was when he was diagnosed with bilateral knee arthralgia in January 2009. Subsequent treatment records dated in 2009 are absent of complaints referable to the left knee. 

At a September 2009 VA examination, the examiner noted that the Veteran had some limited range of motion in his left knee, but did not diagnose a left knee disorder. Similarly, at a November 2014 VA examination, the examiner found that the Veteran did not have, and had never had, a left knee disability. Therefore, such examiners did not provide an etiological opinion referable to the left knee.

At a June 2015 VA examination, the examiner diagnosed left knee strain with an onset date in 2015, and opined that such was less likely than not caused by the Veteran's service-connected disabilities. In this regard, the examiner explained that the Veteran's wide-based gait was indicative of diabetic neuropathy rather than lower extremity neuropathy caused by the Veteran's low back disorder. She also stated that neither the Veteran's right ankle nor his right lower extremity neuropathy are anatomically or functionally associated with his left knee disorder. The examiner further concluded that the Veteran's service-connected disabilities were not aggravating his left knee disorder because his left knee strain appeared stable and had not progressed beyond its expected course. 

Thereafter, an addendum VA opinion was obtained in December 2015. At such time, the examiner opined that the Veteran's left knee disorder is not likely caused by his service-connected disabilities. The rationale was that "an ankle condition won't cause DJD [degenerative joint disease] of the knee (which, as answered above, he does not have DJD of the knee anyways); a back condition won't cause DJD of the knee; [and] a back nerve condition (radiculopathy) won't cause DJD of the knee; there is no nexus. Perhaps another condition can cause abnormal forces on a knee and cause knee pain (arthralgia = pain in the joint) but [the June 2015 VA examiner] is clear in her [] note that the knee strain diagnosis occurred in 2015 and she says nothing about being related to any other condition; she is clear on that point and if the knee condition(s) were related to another cause from another condition she would have plainly stated such (but she did not)."

However, while the December 2015 VA examiner opined that the Veteran's service-connected disabilities did not directly cause the left knee disorder, he failed to fully address whether his current left knee disorder is proximately due to or the result of the service-connected back, ankle, and radiculopathy disorders. Specifically, the examiner failed to address the Veteran's assertion that his service-connected right ankle disorder, low back pain with spasms, and right lower extremity radiculopathy caused him to fall in August 2008 and that the fall caused or aggravated the current left knee condition. 

Consequently, another addendum VA opinion was obtained in November 2016. At such time, the examiner obtained that it was very unlikely that the Veteran's left knee strain is proximately due to, the result of, or aggravated by a service-connected disability. In support of such opinion, the examiner reviewed the Veteran's relevant medical history and noted that, while the Veteran had symptoms in his left foot immediately after the August 2008 fall and, in fact, such was the reason he sought medical attention when they did not improve. However, there was no mention of any knee condition 6, 60, or 126 days after the fall. The examiner stated that, if the left knee had been injured as a result of such fall, the symptoms would not be dormant and show up at a later date. Furthermore, he noted that the Veteran had multiple medical complaints and his primary care provider's notes are well-documented, and there is no mention of any knee pain. In reaching such opinion, the examiner further noted that an EMG/NCV of January 2008 was normal and there was no evidence of radiculopathy at that time. Additionally, treatment records referable to the Veteran's back disability from early 2008 to fall of 2009 revealed no problems with strength, balance, or legs giving way. Furthermore, while the Veteran fell in September 2009, such was noted to be due to a slip, and there was no mention of legs giving way or complaints of knee pain. The examiner further found that treatment records dated from 2007 to 2009 reflect that the Veteran had good balance, walking (gait), and use of cane. 

Upon review of the record, the Board finds that the preponderance of the probative evidence is against the claim of service connection for a left knee disorder. The Board further finds that the opinions offered by VA examiners in June 2015, December 2015, and November 2016, provided after reviewing the complete record, are highly probative as they reflect consideration of all relevant facts and the examiners provided detailed rationales for the conclusions reached. In this regard, the June 2015 examiner fully supported her conclusions that the Veteran's that the left knee strain was not caused or aggravated by the Veteran's service-connected disabilities. Thereafter, the author of the December 2015 and November 2016 VA opinions thoroughly explained why he found that the Veteran's left knee disorder was not caused or aggravated by a fall due to the Veteran's service-connected disabilities. See Nieves-Rodriguez, supra (holding that it is the factually accurate, fully articulated, sound reasoning for the conclusion that contributes to the probative value of a medical opinion); Stefl, supra.

While the Veteran believes that his left knee disorder was caused or aggravated by his service-connected disabilities, as a lay person, he has not shown that he has specialized training sufficient to render such an opinion. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007) (noting general competence to testify as to symptoms but not to provide medical diagnosis). In this regard, the etiology of his left knee strain is a matter not capable of lay observation and requires medical expertise to determine. Specifically, the question of causation or aggravation of such disorder involves a medical subject concerning an internal physical process extending beyond an immediately observable cause-and-effect relationship. See Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (explaining that while the claimant is competent in certain situations to provide a diagnosis of a simple condition such as a broken leg or varicose veins, the claimant is not competent to provide evidence as to more complex medical questions). In the instant case, the question as to whether the Veteran's service-connected disabilities caused a fall that injured his left knee requires knowledge of the symptoms and limitations resulting from his service-connected disabilities as well as the impact such alleged trauma would have a knee joint. Thus, the Board accords the statements of the Veteran regarding the etiology of his left knee disorder to have little probative value as he is not competent to opine on such a complex medical question. 

To the extent that the Veteran is competent to associate his left knee pain with a fall, the Board finds such statements to be not credible. In making such a determination, the credibility of a witness can be impeached by a showing of interest, bias, inconsistent statements, the demeanor of the witness, the facial plausibility of the testimony, the internal consistency of the testimony, impairment in memory, or, to a certain extent, bad character, among other factors. Caluza, supra. 

The Veteran's current claim of injuring his left knee in the August 2008 fall, made in the pursuit of VA benefits, is inherently less reliable than his contemporaneous statements to medical treatment providers at the time of injury. Rucker v. Brown, 10 Vet. App. 67, 73 (1997) (ascribing heightened credibility to statements made to clinicians for the purpose of treatment); see also Williams v. Gov. of Virgin Islands, 271 F.Supp.2d 696, 702 (V.I.2003) (noting that statements made for the purpose of diagnosis or treatment "are regarded as inherently reliable because of the recognition that one seeking medical treatment is keenly aware of the necessity for being truthful in order to secure proper care"). Specifically, records contemporaneous to the August 2008 fall fails to show any complaints referable to the left knee, despite continued complaints related to the left foot. Therefore, the Board finds the Veteran's current statements that he injured his left knee in connection with the August 2008 fall to be not credible. 

Consequently, the Board finds that a left knee disorder is not shown to be causally or etiologically related to any disease, injury, or incident during ACDTURA and is not caused or aggravated by the Veteran's service-connected disabilities. Therefore, service connection for such disorder is not warranted.

In reaching the above conclusion, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claim of entitlement to service connection for a left knee disorder, that doctrine is not applicable to such claim. See 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert, supra.


ORDER

Service connection for a right knee disorder is denied.


REMAND

Although the Board regrets the additional delay, another remand is necessary to ensure that due process is followed and that there is a complete record upon which to decide the Veteran's remaining claim so that he is afforded every possible consideration. See 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. In addition, where the remand orders of the Board are not complied with, the Board errs as a matter of law when it fails to ensure compliance. Stegall v. West, 11 Vet. App. 268, 271 (1998).

The Veteran was examined in regard to his claim for entitlement to service connection for a left foot disorder in September 2009, November 2014, and June 2015. In November 2015, the Board determined that such examinations were adequate for the adjudication of the Veteran's claim, and denied service connection for his left foot disorder. Thereafter, he appealed such denial to the Court.

In the July 2016 Joint Motion, the parties agreed that the Board's November 2015 decision denying service connection for a left foot disorder, claimed as secondary to service-connected disabilities, should be vacated and remanded. First, the parties found that the Board failed to address a June 2015 VA medical opinion that the left foot fracture occurred due to loss of balance, "with contributing multiple factors of chronic back pain, [right lower extremity] pain, and diabetic neuropathic pain." The parties further explained that this opinion suggests a relationship between Veteran's current left foot disorder and his service-connected back and right lower extremity disabilities. Second, the parties found that the aforementioned portion of the June 2015 VA examiner's opinion is internally inconsistent with its conclusion that the left foot disorder was not caused by the service-connected conditions. Thereafter, the Board remanded the claim in September 2016 to obtain a medical opinion to specifically address whether the Veteran's service-connected disabilities caused or aggravated his left foot disorder. 

Thereafter, a new VA opinion was obtained in November 2016. However, this opinion did not fully address the Board's inquiries and instead found that the Veteran's left foot disorder was mild and had since healed and was unlikely to be an ongoing condition. As this finding does not adequately address the Board's inquires, a remand is necessary to obtain an addendum opinion. Stegall, supra. 

Accordingly, the case is REMANDED for the following action:

1. Return the record to the VA examiner who offered the November 2016 opinion. The record and a copy of this Remand must be made available to the examiner. The examiner shall note in the examination report that the record and the Remand have been reviewed. If the November 2016 VA examiner is not available, the record should be provided to an appropriate medical professional so as to render the requested opinion. The need for an additional examination of the Veteran is left to the discretion of the clinician selected to write the addendum opinion.

Following a review of the record, the examiner is requested to offer an opinion as to the below inquiries.

For the purpose of rendering the requested opinion, he is advised to accept as true that the Veteran has a diagnosed left foot disorder, i.e., closed left foot fracture, or residuals thereof, even if such is currently asymptomatic.

The examiner is to provide an opinion as to whether it is at least as likely as not (a 50 percent or greater probability) that the Veteran's diagnosed closed left foot fracture is proximately due to or the result of, or aggravated by a service-connected disability. The examiner is to address whether the service-connected disabilities caused a fall (e.g., the August 2008 fall) that caused or aggravated any current left foot disorder. In answering this question, address the June 2015 medical opinion that the left foot fracture occurred due to loss of balance, with contributing multiple factors of chronic back pain, right lower extremity pain, and diabetic neuropathic pain.

The term "aggravation" means any increase in severity of a nonservice-connected disease or illness that is proximately due to or the result of a service-connected disease or injury, and not due to the natural progress of the nonservice-connected disease. For any aggravation found, the examiner should state, to the best of their ability, the baseline of symptomatology and the amount, quantified if possible, of aggravation beyond the baseline symptomatology by the aggravation.

The examiner's report must include a complete rationale for all opinions expressed.

2. After completing the above actions, to include any other development as may be indicated by any response received as a consequence of the actions taken in the preceding paragraphs, the Veteran's claim should be readjudicated based on the entirety of the evidence. If either claim remains denied, the Veteran and his representative should be issued a supplemental statement of the case. An appropriate period of time should be allowed for response.

Thereafter, the claim should be returned to the Board for further appellate consideration, if otherwise in order. The Board intimates no opinion as to the outcome of the claim. The Veteran need take no action until so informed. The purpose of this REMAND is to ensure compliance with due process considerations.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
A. JAEGER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs