Citation Nr: 1801838 
Decision Date: 01/10/18 Archive Date: 01/23/18

DOCKET NO. 12-31 225A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Louis, Missouri


THE ISSUES

1. Entitlement to higher staged initial ratings for major depressive disorder, to include anxiety disorder, currently rated 30 percent from February 27, 2008 through February 7, 2013, and 50 percent from February 8, 2013 through May 30, 2016.

2. Entitlement to service connection for residuals of traumatic brain injury (TBI). 

3. Entitlement to a total disability rating for compensation purposes based on individual unemployability due to service-connected disabilities (TDIU).


REPRESENTATION

Appellant represented by: Joseph R. Moore, Attorney


ATTORNEY FOR THE BOARD

J. Baker, Associate Counsel


INTRODUCTION

The Veteran served on active duty from February 1981 to February 1984.

These matters come before the Board of Veterans' Appeals (Board) on appeal of rating decisions issued in February 2010 (major depressive disorder) and April 2010 (TBI and TDIU) by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Louis, Missouri.

These matters were previously before the Board in February 2016, when they were remanded for further development. The February 2016 decision, in part, denied entitlement to a higher initial disability rating for the Veteran's psychiatric disability for the period prior to February 8, 2013. The Veteran then appealed that denial to the United States Court of Appeals for Veterans Claims (Court). In November 2016, the Court issued an Order granting a Joint Motion for Remand (Joint Motion), vacating the February 2016 denial and returning the matter to the Board. The matters now return to the Board for appellate consideration.

The issue of entitlement to service connection for residuals of traumatic brain injury is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ). 

Although the TDIU issue adjudicated below would normally be inextricably intertwined with the issue of service connection for TBI, in light of the favorable award of TDIU benefits herein, there is no prejudice to the Veteran by the Board's adjudication of the TDIU claim at this time.


FINDINGS OF FACT

1. The most probative evidence of record reflects that during the rating period on appeal, the Veteran's major depressive disorder to include anxiety disorder was manifested by symptoms productive of functional impairment, at worst, comparable to occupational and social impairment with deficiencies in most areas.

2. The most probative evidence of record demonstrates that it is at least as likely as not that the Veteran's service-connected disabilities preclude him from securing or maintaining substantially gainful employment consistent with his educational and occupational background.


CONCLUSIONS OF LAW

1. The criteria for a 70 percent initial rating, and no higher, for depressive disorder to include anxiety disorder, for the entire rating period on appeal prior to May 31, 2016, have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2015); 38 C.F.R. §§ 3.159, 3.321, 4.3, 4.7, 4.126, 4.130, Diagnostic Code 9411 (2016).

2. The criteria for a total disability rating for compensation purposes based on individual unemployability (TDIU) are met for the period on appeal. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.340, 3.341, 4.16 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA's Duty to Notify and Assist

With respect to the Veteran's claim herein, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2016); see also Scott v. McDonald, 789 F.3d 1375(Fed. Cir. 2015).

Legal Criteria

The Veteran's major depressive disorder, to include anxiety disorder (psychiatric disability) is currently rated as 30 percent disabling from February 27, 2008 through February 7, 2013, 50 percent disabling from February 8 2013 through May 30, 2016, and a 100 percent (schedular) rating from May 31, 2016. As the appeal stems from the original rating decision granting service connection, the relevant period on appeal is from the date of service connection, February 27, 2008. 

Disability ratings are determined by the application of VA's Schedule for Rating Disabilities (Schedule), which is based on the average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. Pertinent regulations do not require that all cases show all findings specified by the Schedule, but that findings sufficient to identify the disease and the resulting disability and above all, coordination of the rating with impairment of function will be expected in all cases. 38 C.F.R. § 4.21; see also Mauerhan v. Principi, 16 Vet. App. 436(2002).

Further, a disability rating may require re-evaluation in accordance with changes in a veteran's condition. The Board will consider whether separate ratings may be assigned for separate periods of time based on facts found, a practice known as "staged ratings," whether it is an initial rating case or not. Fenderson v. West, 12 Vet. App. 119, 126-27(1999); Hart v. Mansfield, 21 Vet. App. 505, 519(2007).

Under 38 U.S.C.A. § 7104, Board decisions must be based on the entire record, with consideration of all the evidence. The law requires only that the Board address its reasons for rejecting evidence favorable to the claimant. Timberlake v. Gober, 14 Vet. App. 122, 128-29(2000). The Board must review the entire record, but does not have to discuss each piece of evidence. Gonzales v. West, 218 F.3d 1378, 1381(Fed. Cir. 2000).

In determining whether statements submitted by a veteran are credible, the Board may consider internal consistency, facial plausibility, and consistency with other evidence submitted on behalf of the claimant. Caluza v. Brown, 7 Vet. App. 498 (1995). 

The Veteran's psychiatric disability is evaluated under the provisions of 38 C.F.R. § 4.130, Diagnostic Code 9411. The current regulations establish a general rating formula for mental disorders. 38 C.F.R. § 4.130. Ratings are assigned according to the manifestation of particular symptoms. However, the use of the term "such as" in 38 C.F.R. § 4.130 demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Mauerhan v. Principi, 16 Vet App 436, 442-3(2002). Accordingly, the evidence considered in determining the level of impairment under 38 C.F.R. § 4.130 is not restricted to the symptoms provided in the diagnostic code. Instead, VA must consider all symptoms of a claimant's condition that affect the level of occupational and social impairment, including, if applicable, those identified in the DSM-IV (American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994). 38 C.F.R. § 4.125; see also Schedule for Rating Disabilities-Mental Disorders and Definition of Psychosis for Certain VA Purposes, 79 Fed. Reg. 45,093 (Aug, 4, 2014) (updating 38 C.F.R. § 4.125 to reference the American Psychiatric Association's Diagnostic and Statistical Manual for Mental Disorders, Fifth Edition, or "DSM-5").

Pursuant to Diagnostic Code 9411, a 30 percent rating is assigned for occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events). 38 C.F.R. § 4.130, Diagnostic Code 9411. 

A 50 percent evaluation is warranted for PTSD when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. Id.

A 70 percent evaluation is warranted where there is objective evidence demonstrating occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to suicidal ideation; obsessional rituals which interfere with routine activities, speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, or effectively; impaired impulse control, such as unprovoked irritability with periods of violence; spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances, including work or a work-like setting; and the inability to establish and maintain effective relationships. Id.

A maximum 100 percent evaluation is for application when there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and memory loss for names of close relatives, own occupation, or own name. Id.

The Global Assessment of Functioning (GAF) is a scale reflecting the psychological, social, and occupational functioning on a hypothetical continuum of mental health illness. See Carpenter v. Brown, 8 Vet. App. 240, 242(1995); see also Richard v. Brown, 9 Vet. App. 266, 267(1996) (citing DSM-IV). According to the pertinent sections of DSM-IV, a GAF score of 81 to 90 represents absent or minimal symptoms. A GAF score of 71 to 80 indicates that if symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument) and result in no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork). A GAF score of 61 to 70 indicates some mild symptoms or some difficulty in social or occupational functioning, but generally functioning pretty well with some meaningful interpersonal relationships. A GAF score of 51 to 60 indicates moderate symptoms or moderate difficulty in social or occupational functioning.

Although GAF scores are important in rating mental disorders, the Board must consider all the pertinent evidence of record and set forth a decision based on the totality of the evidence in accordance with all applicable legal criteria. See Carpenter, 8 Vet. App. at 242. Accordingly, an examiner's classification of the level of psychiatric impairment, by word or by a GAF score, is considered but is not determinative of the percentage VA disability rating assigned. The percentage rating is based on all the evidence that bears on occupational and social impairment. Id.; see also 38 C.F.R. § 4.126.

Analysis

The record reflects that the Veteran consistently reports cognitive dysfunction, hypervigilance, memory impairment, depression, anxiety, irritability, anger, and difficulty interacting with people. The Veteran also reports difficulty sleeping and nightmares. Treatment records consistently show the Veteran with limited social activity, but that the Veteran did most social activities with and because of his wife. Treatment records are also consistently positive for depression, anxiety, sleep difficulty, hypervigilance, and nightmares. The Veteran is regularly oriented to place and person. The record does not show that the Veteran experiences hallucinations. A September 2009 VA examination was positive for ritualistic behavior such as checking locks. The Veteran was married, but stated that he did not like to socialize with other people. He was appropriately dressed and groomed. The Veteran had difficulty with serial 7's, rambling thought processes, and the examiner noted delusional content. The Veteran had normal judgment and limited insight. The Veteran denied panic attacks and had normal memory. The examiner opined that the Veteran's occupational and social impairment was characterized by an occasional decrease in work efficiency.

A January 2011 evaluation indicated that the Veteran could not navigate difficult or moderately complex tasks. The Veteran was noted to have poor social functioning except for when with his wife. The Veteran had difficulty with attention, executive functioning, processing speed, and memory. An August 2012 VA examination showed marital conflict, depressive symptoms causing impairment, nightmares, an inability to complete serial 7's, and a flattened affect. The examiner noted that the Veteran was working as a volunteer firefighter. However, subsequent information in the record reveals that the Veteran was in a sheltered work environment, and did not actually respond to emergencies. 

While the record is otherwise absent consistent mention of suicidal ideation, the Veteran showed suicidal ideation in December 2010 VA treatment records. An August 2012 VA treatment record showed that the Veteran reported being depressed every day, difficulty concentrating, and feelings of being better off dead. Further, an October 2012 treatment record showed that the Veteran was threatening suicide with a gun. The record also shows complaints of short and long term memory problems. While some of the record attributes memory problems to headaches, a February 2010 VA treatment record attributes memory problems to mood, and a December 2010 VA treatment record attributes memory problems to psychologic issues. 

During the period prior to February 8, 2013, the Veteran regularly exhibited a flattened affect, tangential speech, difficulty with complex tasks, complained of memory impairment, disturbances of motivation or mood, and difficulty with interpersonal relationships. Further, while the Veteran remained married, the Veteran reported and was found to be depressed on nearly every examination and he repeatedly reported obsessive rituals. The Veteran did not exhibit hallucinations persistent danger to self, or an inability to perform activities of daily living, although he had help from his wife. 

For the period on appeal from February 8, 2013, the Veteran continued to show continuous depression. A May 2014 VA examiner described the Veteran's occupational and social impairment as showing reduced reliability and productivity. The Veteran indicated that he was separated from his wife, that he has no friends, and that he keeps to himself. The Veteran reported daily verbal outbursts, and the examiner noted difficulty maintaining relationships, disturbances of motivation and mood, difficulty adapting to stress, and impaired impulse control. The Veteran's mood was irritable, and was tearful. The Veteran's disability picture during the period from February 8, 2013 is consistent with his symptoms in the prior period. However, the Veteran did not exhibit hallucinations, gross impairment of thought, or persistent danger to self or other such that his impairment more closely resembled a total occupational and social impairment. 

While the Board recognizes the VA examiners characterizations of the Veteran's occupational and social impairment is less than deficiency in most areas, a complete view of the record on appeal shows a more severe disability picture than reflected on the VA examinations. As such, the Board finds that during the entire period on appeal, the Veteran's psychiatric disability was manifested by symptoms productive of functional impairment, at worst, comparable to occupational and social impairment with deficiencies in most areas. Thus, a 70 percent rating, but no higher, is warranted throughout the rating period on appeal prior to May 31, 2016. 

To the extent that the Veteran contends that his psychiatric disability is more severe than reflected by the 70 percent disability rating assigned herein, the Board observes that the Veteran can attest to factual matters of which he has first-hand knowledge and understanding as a lay person, such as anger or irritability. See Washington v. Nicholson, 19 Vet. App. 362, 368(2005); see also Layno v. Brown, 6 Vet. App. 465, 469(1994). However, he is not competent to state that his symptoms are of severity sufficient to warrant a higher rating under VA's diagnostic codes because such an opinion requires medical expertise and knowledge that he has not been shown to possess. See Davidson v. Shinseki, 581 F.3d 1313(Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372(Fed. Cir. 2007). Accordingly, the Board attaches more probative weight to the medical records and clinical findings from the skilled medical professionals who conducted the VA examinations and treated the Veteran, rather than to the Veteran's lay statements.

Neither the Veteran nor his representative has raised any other issues, nor have any other issues been reasonably raised by the record. See Doucette v. Shulkin, 28 Vet. App. 366, 369-70 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).


TDIU

Total disability ratings for compensation may be assigned, where the schedular rating is less than total, when a veteran is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that if there is only one such disability, such disability shall be ratable as 60 percent or more, and if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more and sufficient disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16 (a).

For a veteran to prevail on a claim for a TDIU, the question is whether the Veteran is capable of performing the physical and mental acts required by employment, not whether the Veteran can find employment. This is so because a disability rating in itself is recognition that the impairment makes it difficult to obtain or keep employment. See Van Hoose v. Brown, 4 Vet. App. 361(1993). 

Consideration may be given to a veteran's level of education, special training, and previous work experience, but not to his or her age or to impairment cause by nonservice-connected disabilities. See 38 C.F.R. §§ 3.341, 4.16, 4.19. Substantially gainful employment is defined as work that is more than marginal and that permits the individual to earn a living wage. See Moore v. Derwinski, 1 Vet. App. 356(1991). Marginal employment shall not be considered substantially gainful employment.

The determination of whether a veteran is unable to secure or follow a substantially gainful occupation as a result of service-connected disability is a factual determination rather than a medical question. Therefore, responsibility for the ultimate determination of whether a veteran is capable of securing or following substantially gainful employment is placed on the VA, not a medical examiner. Geib v. Shinseki, 733 F.3d 1350, 1354(Fed. Cir. 2013); see also 38 C.F.R. § 4.16; Floore v. Shinseki, 26 Vet. App. 376, 381(2013).

As a result of the disability ratings assigned herein, the Veteran meets the percentage requirements for a TDIU for the entire period on appeal. The record reflects that the Veteran did not finish high school, but later completed a GED. The Veteran has prior work history as a truck driver, volunteer firefighter, and working at a pizza place. The Veteran stopped working as a truck driver in 1998 due to back problems. 

A September 2009 VA examination opined that the Veteran's depression appears to contribute to transient and mild decrements in ability to work. A January 2011 private examination determined that the Veteran was unable to work due to depression and cognitive dysfunction. A private October 2015 evaluation found that the Veteran could not manage the complexity of an occupational environment where one is expected to behave in an appropriate fashion with coworkers, customers, and supervisors. The Veteran repeatedly reports difficulty interacting with people, including anger, and outbursts. The Veteran's former employer from a restaurant submitted a September 2017 letter, wherein he indicated that the Veteran worked with him until January 2010. The employer noted that the Veteran was an "extremely part time" employee, and that the Veteran had trouble relating to people in the work environment and completing regular restaurant work. The employer noted anger, frustration, and difficulty concentrating. While the record reflects that the Veteran has reported being a member of a volunteer fire team, and responding to emergencies, the Veteran has subsequently indicated that he attended meetings, but did not go on emergency calls. 

While several VA examiners indicated that the Veteran's occupational limitation was less than total, the Board finds that in taking a complete view of the Veteran's disability picture, it is at least as likely as not that the Veteran would be unable to secure or maintain a substantially gainful occupation. The Board finds that the Veteran's "extremely part time" employment was not other than marginal employment. The Veteran has been unable to work anywhere during the period on appeal for more than a few months, and his most recent work was in a sheltered environment as described by the employer. The record consistently notes difficulty with concentration, memory, and interacting with others. The Board affords great probative weight to the findings of the January 2011 and October 2015 examiners with regard to the Veteran's inability to perform at work. The record shows that the Veteran would have difficulty with any job that involved complex to moderately complex tasks as interaction with people, including supervisors. Thus, the Board finds that the evidence is in relative equipoise as to whether the Veteran is capable of securing or following substantially gainful employment consistent with his education and occupational experience. In affording the benefit-of-the-doubt to the Veteran, the claim for entitlement to a TDIU is granted. See 38 U.S.C.A. § 5107 (b); 38 C.F.R. § 3.102.


ORDER

Entitlement to a 70 percent rating for depressive disorder to include anxiety disorder for the period on appeal is granted.

Entitlement to a TDIU is granted.


REMAND

Pursuant to the February 2016 Board remand, the RO was instructed to provide an opinion that considered new evidence that bore on whether the Veteran had a current TBI disability. The examiner was specifically asked to address the favorable evidence submitted by the Veteran. A subsequent May 2016 VA examination stated that the Veteran was not diagnosed with TBI or residuals thereof. The Board finds that examination inadequate. See Barr v. Nicholson, 21 Vet. App. 303, 312(2007) (when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate); Stegall v. West, 11 Vet. App. 268, 271(1998) (holding that if the Board proceeds with final disposition of an appeal, and the remand orders have not been complied with, the Board itself errs in failing to ensure compliance). An opinion based upon an inaccurate factual premise has no probative value. Reonal v. Brown, 5 Vet. App. 458, 461 (1993). The Board notes that the examiner did not address or appear to consider an October 2014 treatment record that appears to reflect a diagnosis of TBI when making its opinion whether the Veterand now or ever had a TBI. Therefore, an addendum opinion is necessary to consider the prior diagnosis of a TBI to determine whether the Veteran has as current disability for the purposes of service-connection. 

Accordingly, the case is REMANDED for the following action:

1. Forward the record and a copy of this Remand to the examiner who wrote the May 2016 opinion or, if that examiner is unavailable, to another suitably qualified VA clinician, for completion of an addendum opinion. If necessary for an adequate opinion, the examiner may obtain another examination of the Veteran. The examiner must review the entire record and consider and address any prior diagnoses of TBI. 

The examiner must provide the following opinion:

Is it at least as likely as not (i.e., 50 percent probability or greater) that the Veteran has residuals from an in-service traumatic brain injury? If so, specify the residuals. Rationale must be provided for the opinion proffered.

In rendering rationale for the medical opinion, the examiner must address the favorable medical evidence submitted by the Veteran regarding prior diagnosis of traumatic brain injury.

2. After the above development has been completed, readjudicate the issue on appeal. If the benefit sought remains denied, furnish the Veteran and his attorney a Supplemental Statement of the Case and an appropriate amount of time for response. Thereafter, return the case to the Board for review.

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
U. R. POWELL
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs